ATTORNEY FOR APPELLANT
David W. Stone IV
Stone Law Office and Legal Research
Anderson, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

## In the
# Indiana Supreme Court



No. 48S02-1406-CR-364

JACOB FULLER,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Madison Circuit Court, No. 48C01-1103-MR-434
The Honorable David A. Happe, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 48A02-1210-CR-848

**June 2, 2014**

**Rucker, Justice.**

In a companion case, today we exercised our constitutional authority and revised the 150-year sentence received by sixteen-year-old Martez Brown for two counts of murder and one count of robbery. Brown v. State, No. 48S02-1406-CR-363, ___ N.E.3d ___ (Ind. 2014). In this case we exercise that same authority to revise the 150-year sentence received by Brown's cohort, fifteen-year-old Jacob Fuller.

**Facts and Procedural History**

Sometime during the late evening hours of Friday, November 26 and the early morning hours of Saturday, November 27, 2010, three teenagers—eighteen-year-old Na-Son Smith, sixteen-year-old Martez Brown and fifteen-year-old Jacob Fuller—robbed Stephen Streeter and his girlfriend Keya Prince in their Anderson home. Streeter and Prince were shot and killed during the robbery, and Fuller and his friends absconded with several thousand dollars in cash, several pounds of marijuana, two video game systems, two flat-screen televisions, and a 9mm handgun. The bodies of Streeter and Prince were discovered the following Monday when police conducted a welfare check at their home.

At about 2:45 a.m. the next day an officer on patrol saw two youths walking along a street in Anderson and stopped them, suspecting a curfew violation. They were later identified as Fuller and Smith. Around the same time, a resident called 9-1-1 to report seeing a young man toss a handgun into a nearby yard as police approached. Fuller and Smith were arrested, the handgun was recovered nearby, and the resident identified Fuller as the person who had discarded the handgun. Subsequently, Fuller's fingerprints were found on the magazine of the handgun, and forensic analysis established the bullet killing Keya Prince was fired from this handgun.

A few days later Brown was arrested in connection with the crime and gave police a statement—which he subsequently recanted when called as a witness during Fuller's trial—implicating himself, Fuller, and Smith in the double killings. Specifically Brown explained that he, Fuller, and Smith had targeted Streeter because they heard he was a drug dealer and kept large amounts of cash. According to Brown, Fuller drove the three of them to Streeter's house;

each of the teenagers was armed with a gun; and the trio entered the house, bound Streeter, and grabbed Prince. While Brown was "looking for money and the bud," Fuller shot Prince once in the chest. State's Ex. 172 (Tr. of Brown's Interview at 29). According to Brown, shortly thereafter Smith shot Streeter once in the back of the head. Brown told police his friends shot the victims because they were afraid of being recognized. During a police interview shortly after his arrest, Fuller admitted possessing the handgun, but denied involvement with the shootings.

After the robbery Fuller and his cohorts went on a shopping spree in which they spent the proceeds. They were later identified in a Walmart surveillance video during one of these excursions. And police later recovered photographs retrieved from the cell phones of Smith and Fuller taken shortly after the crime depicting the trio displaying a large amount of cash. State's Ex. 157a.

The State filed a delinquency petition against Fuller in juvenile court and also filed a motion requesting the juvenile court to waive jurisdiction. The juvenile court granted the motion. The State then charged Fuller with two counts of murder, one count of robbery as a Class A felony, one count of burglary as a Class A felony, and one count of theft as a Class D felony. After a trial by jury, Fuller was acquitted of burglary, but found guilty of the remaining charges. At the sentencing hearing the trial court reduced the robbery conviction to a Class B felony because of double jeopardy concerns and did not enter judgment for theft finding it a lesser included offense of the robbery. After recounting and weighing the aggravating and mitigating factors the trial court ultimately sentenced Fuller to the maximum term of sixty-five years for each murder and the maximum term of twenty years for the robbery, all to be served consecutively, resulting in an aggregate sentence of 150 years—the same sentence imposed on Fuller's cohorts, Brown and Smith.

Fuller appealed raising several claims including the appropriateness of his sentence, all of which the Court of Appeals rejected. See Fuller v. State, No. 48A02-1210-CR-848 (Ind. Ct. App. July 10, 2013). We now grant Fuller's petition to transfer to address his appropriateness claim. In all other respects we summarily affirm the opinion of the Court of Appeals. See Ind. Appellate Rule 58(A)(2). Additional facts are set forth below.

**Discussion**

Juvenile courts generally have exclusive original jurisdiction over children like Fuller alleged to be delinquent.  See I.C. § 31-30-1-1(1).  But upon the request of the prosecutor and after an investigation and hearing:

> [T]he juvenile court shall waive jurisdiction if it finds that:
> (1) the child is charged with an act that would be murder if committed by an adult;
> (2) there is probable cause to believe that the child has committed the act; and
> (3) the child was at least ten (10) years of age when the act charged was allegedly committed;
> unless it would be in the best interests of the child and of the safety and welfare of the community for the child to remain within the juvenile justice system.

I.C. § 31-30-3-4.  Fuller was thus waived into adult court, exposing him to sentences of forty-five to sixty-five years for each murder, with the advisory sentence being fifty-five years; and six to twenty years for Class B felony robbery, with the advisory sentence being ten years.[1]  I.C. §§ 35-50-2-3, -5.  The trial court has further discretion to "determine whether terms of imprisonment shall be served concurrently or consecutively . . . [and] may consider" aggravating and mitigating circumstances in making such a determination.  I.C. § 35-50-1-2(c).

At the sentencing hearing, even while arguing that Fuller should receive a sentence of "a minimum of one thirty (130) [years]," Tr. at 786, the State nonetheless presented argument acknowledging the significance of Fuller's young age:

> And, you know, the age is quite distressing to me and I, I look at it in the sense that there's an eighteen (18) year old, a sixteen (16) year old and a fifteen (15) year old, and my common sense tells me, of those three (3), the fifteen (15) year old has to be less culpable than the eighteen (18) year old and the eighteen (18) year

---

[1] Subsequent to Fuller's sentencing, the Indiana Legislature enacted statutes providing courts with greater flexibility in choosing sentencing alternatives where juveniles under the age of eighteen are outside the jurisdiction of the juvenile court or are waived to adult court.  See Pub. L. No. 104-2013, §§ 1 and 2, 2013 Ind. Acts 766-71 (codified at Ind. Code §§ 31-30-4-1, -7 (2013) and Ind. Code § 35-50-2-17 (2013)).

old is probably in the position to control the fifteen (15) and sixteen (16) year old a lot better than anyone else in that situation and he's the one that's probably go[ing] along. . . .

Tr. at 784-85. In imposing sentence the trial court identified the following aggravating factors: (1) Fuller's history of criminal and delinquent activity; (2) that Fuller conspired with his co-defendants to commit the offenses; (3) the offenses were committed in the presence of a person under the age of eighteen (cohort Brown who was sixteen); and (4) the crimes resulted in multiple deaths. In mitigation, the trial court identified Fuller's young age. Concluding that the aggravating factors "substantially outweigh[ed]" the sole mitigating factor, Tr. at 790, the trial court sentenced Fuller to the maximum sentence possible: Sixty-five years for Streeter's murder, plus sixty-five years for Prince's murder, plus twenty years for the robbery, all to be served consecutively.

The trial court certainly acted well within its broad discretion in imposing this sentence. However, "[e]ven where a trial court has not abused its discretion in sentencing, the Indiana Constitution authorizes independent appellate review and revision of a trial court's sentencing decision." Pierce v. State, 949 N.E.2d 349, 352 (Ind. 2011) (citing Ind. Const. art. 7, §§ 4, 6; Anglemyer v. State, 868 N.E.2d 482, 491 (Ind. 2007), clarified on reh'g by 875 N.E.2d 218). We implement this authority through Indiana Appellate Rule 7(B), "which provides that 'the Court may revise a sentence . . . if, after due consideration of the trial court's decision'" we find "'the sentence is inappropriate in light of the nature of the offense and the character of the offender.'" Anglemyer, 868 N.E.2d at 491 (quoting App. R. 7(B)). Whereas prior to 2003 our authority to revise was confined to cases in which the sentence was "*manifestly unreasonable* in light of the nature of the offense and the character of the offender," see App. R. 7(B) (2002) (emphasis added), the current rule reflects our "modest steps to provide more realistic appeal of sentencing issues." Serino v. State, 798 N.E.2d 852, 856 (Ind. 2003). Today's Rule 7(B) "places central focus on the role of the trial judge, while reserving for the appellate court the chance to review the matter in a climate more distant from local clamor." Id. at 856-57.

In considering the nature of the offense we recognize the advisory sentence is the starting point the Legislature selected as appropriate for the crime committed. See Anglemyer, 868

N.E.2d at 494. The trial court ultimately imposes a sentence based on the aggravating and mitigating circumstances it finds. However, in analyzing a claim under Appellate Rule 7(B), we are not limited to the mitigators and aggravators found by the trial court.

Concerning the nature of the offense, as we observed today in Brown "although senseless and reprehensible, the murders in this case were not particularly heinous." Brown, No. 48S02-1406-CR-363, slip op. at 6. In particular, "there is no evidence that the victims were tortured, beaten, or lingered in pain." Id. As for the character of the offender, the most significant factor here is Fuller's young age. Again, we recount what we had to say on this subject in Brown.

> Sentencing considerations for youthful offenders—particularly for juveniles—are not coextensive with those for adults. See Miller v. Alabama, 132 S. Ct. 2455, 2469 (2012) (requiring the sentencing judge to "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison" (footnote omitted)). Thus, both at initial sentencing and on appellate review it is necessary to consider an offender's youth and its attendant characteristics.

> In holding death sentences and mandatory life without parole sentences for those under the age of eighteen to be unconstitutional, the United States Supreme Court has underpinned its reasoning with a general recognition that juveniles are less culpable than adults and therefore are less deserving of the most severe punishments. See Graham[v. Florida], 560 U.S. [48, 68 (2010)]. This presumption that juveniles are generally less culpable than adults is based on previous and ongoing "'developments in psychology and brain science'" which "'continue to show fundamental differences between juvenile and adult minds'" in, for instance, "parts of the brain involved in behavior control." Miller, 132 S. Ct. at 2464 (quoting Graham, 560 U.S. at 68). The Supreme Court has discerned "three significant gaps between juveniles and adults." Id. First, "[a]s compared to adults, juveniles have a 'lack of maturity and an underdeveloped sense of responsibility.'" Graham, 560 U.S. at 68 (quoting Roper v. Simmons, 543 U.S. 551, 569 (2005) (quotation omitted)). Second, "they 'are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure,'" id. (quoting Roper, 543 U.S. at 569), and "they have limited 'contro[l] over their own environment' and lack the ability to extricate themselves from horrific, crime-producing settings."

6

Miller, 132 S. Ct. at 2464 (alteration in original) (quoting Roper, 543 U.S. at 569). Finally, "a child's character is not as 'well formed' as an adult's . . . and his actions [are] less likely to be 'evidence of irretrievabl[e] deprav[ity].'" Id. (alteration in original) (quoting Roper, 543 U.S. at 570). "These salient characteristics mean that '[i]t is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.'" Graham, 560 U.S. at 68 (alteration in original) (quoting Roper, 543 U.S. at 573). Even justices not finding categorical Constitutional violations in these juvenile cases agree with this precept. See Graham, 560 U.S. at 90 (Roberts, C.J., concurring in the judgment) ("Roper's conclusion that juveniles are typically less culpable than adults has pertinence beyond capital cases."); Roper, 543 U.S. at 599 (O'Connor, J., dissenting) ("It is beyond cavil that juveniles as a class are generally less mature, less responsible, and less fully formed than adults, and that these differences bear on juveniles' comparative moral culpability.").

Consistent with the Supreme Court's reasoning this Court has not been hesitant to reduce maximum sentences for juveniles convicted of murder. In Carter v. State, we reduced to fifty years a fourteen-year-old's maximum sixty-year sentence for the brutal murder of a seven-year-old girl, recognizing among other things his young age. 711 N.E.2d 835, 836-37 (Ind. 1999). In the case of a sixteen-year-old who brutally beat his adoptive parents to death while they slept, we reduced a maximum 120-year sentence to eighty years. Walton v. State, 650 N.E.2d 1134, 1135, 1137 (Ind. 1995). And in Widener v. State, 659 N.E.2d 529, 530 (Ind. 1995), the seventeen-year-old defendant and his two eighteen-year-old cohorts planned to rob a woman as she made a night deposit after work. In executing the crime, the defendant fired multiple shots at the victim, killing her. In the days after the robbery the perpetrators spent the proceeds of their crime at the mall, going to the movies and out to eat. Finding additional mitigating circumstances not recognized by the trial court, we concluded the defendant's seventy-year sentence was manifestly unreasonable and reduced it to an aggregate term of fifty years. Id. at 530-31, 534.

Brown, No. 48S02-1406-CR-363, slip op. at 8-9. As with defendant Brown, defendant Fuller's 150-year sentence likewise "'forswears altogether the rehabilitative ideal.'" Miller, 132 S.Ct. at 2465 (quoting Graham, 560 U.S. at 74)). And like Brown's maximum consecutive sentence,

7

Fuller's maximum consecutive sentence also essentially "'means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of the [juvenile] convict, he will remain in prison for the rest of his days.'" Graham, 560 U.S. 70 (quoting Naovarath v. State, 779 P.2d 944, 944 (Nev. 1989)).

In the case of sixteen-year-old Brown we employed our collective sense of what was an appropriate sentence and determined he "should receive an enhanced sentence of sixty years for each count of murder to be served concurrently and an enhanced sentence of twenty years for robbery to be served consecutively, for a total aggregate sentence of eighty years imprisonment." Brown, No. 48S02-1406-CR-363, slip op. at 10. We believe Fuller is entitled to a sentence revision as well. But we are not inclined to revise Fuller's sentence to be precisely the same, or even less than that of his cohort. Although only a year older than Fuller, Brown unlike Fuller was an accomplice—a factor that we found particularly important. Instead Fuller was one of the actual shooters. We conclude that Fuller should receive the maximum enhanced sentence of sixty-five years for each count of murder to be served concurrently, and an enhanced sentence of twenty years for robbery to be served consecutively for a total aggregate sentence of eighty-five years imprisonment.

## Conclusion

We affirm Fuller's convictions and remand this cause to the trial court with instructions to issue an amended sentencing order consistent with this opinion.

Dickson, C.J., and David, Massa and Rush, JJ., concur.