MAY, Judge,
concurring with opinion (separate).
While I reluctantly agree a jury could find Layman and Sparks guilty of felony murder even though neither they nor their accomplices killed anyone, I write separately to address whether Layman and Sparks waived the constitutional issues they raise. I write also to express my serious concerns about the felony murder statute and how it was applied in the case before us, and to suggest an approach to its application that I believe is more in line with recent Indiana and United States Supreme Court decisions.
1. The Statutory Language
I note initially that the language of the felony murder statute suggests the legislature did not intend it to be applied to a situation like that before us, where the lolling was committed by one resisting the felony and not by any defendant. That statute provides: “A person who ... kills another human being while committing or attempting to commit ... burglary ... commits murder, a felony.” Ind.Code § 35-42-1-1. Neither Layman nor Sparks killed another human being while committing their burglary.
*965 In his separate opinion in Palmer v. State, 704 N.E.2d 124 (Ind.1999), Justice Sullivan said: “I do not believe that our statutes authorize the imposition of liability for murder where the defendant’s co-perpetrator is the victim.” Id. at 128 (Sullivan, J., concurring in part and dissenting in part). Palmer was attempting to help Robert Williams escape from the custody of law enforcement, and a correctional officer killed Williams in the course of the attempted escape. Justice Sullivan noted “Palmer here did not kill another human being; his co-perpetrator was killed by a law enforcement official. Under the terms of the felony murder statute, Palmer is not guilty of felony murder.” Id.
The Palmer majority held otherwise, however, and affirmed Palmer’s conviction: “The statutory language ‘kills another human being while committing’ does not restrict the felony murder provision only to instances in which the felon is the killer, but may also apply equally when, in committing any of the designated felonies, the felon contributes to the death of any person.” Id. at 126.
Layman, Sparks, and amici argue persuasively that we should reconsider Palmer, but we may not accept their invitation to do so. Indiana Supreme Court precedent is binding on us until it is changed by that court or by legislative enactment. Dragon v. State, 774 N.E.2d 103, 107 (Ind.Ct.App.2002), trans. denied. Indiana Appellate Rule 65(A) authorizes us to criticize existing law, but it is not our role to “reconsider” Supreme Court decisions. Id.

2. Waiver of Constitutional Issues

I cannot agree that Layman and Sparks forfeited their challenges to the constitutionality of their sentences or of the statute pursuant to which they were tried in adult court and not juvenile court. We may address constitutional issues that were not raised below, and it is appropriate to do so in this case.
In Morse v. State, 593 N.E.2d 194, 197 (Ind.1992), cert. denied sub nom. Morse v. Hanks, 528 U.S. 851, 120 S.Ct. 129, 145 L.Ed.2d 109 (1999), our Indiana Supreme Court said, “the constitutionality of a statute may be raised at any stage of the proceeding including raising the issue sua sponte by this Court.” In Plank v. Cmty. Hospitals of Indiana, Inc., 981 N.E.2d 49, 53 (Ind.2013), that Court clarified that
appellate review presupposes that a litigant’s arguments have been raised and considered in the trial court. To abandon that principle is to encourage the practice of ‘sandbagging’: suggesting or permitting, for strategic reasons, that the trial court pursue a certain course, and later — if the outcome is unfavorable — claiming that the course followed was reversible error.” Declining to review an issue not properly preserved for review is essentially a “cardinal principal [sic] of sound judicial administration.
(quoting Freytag v. Comm’r of Internal Revenue, 501 U.S. 868, 895, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991) (Scalia, J., concurring)).
But the Plank Court then noted appellate courts have long exercised discretion to address the merits of a constitutional claim notwithstanding waiver. It concluded: “Essentially, Morse stands for the proposition that appellate courts are not prohibited from considering the constitutionality of a statute even though the issue otherwise has been waived. And indeed a reviewing court may exercise its discretion to review a constitutional claim on its own accord.” Id. at 53-54.
I would exercise that discretion in this case. Layman and Sparks have raised important issues that have not been ad *966 dressed by our courts and those issues deserve our consideration.
3. Application of Felony Murder Statute to Juveniles
In companion cases Brown v. State, 10 N.E.3d 1 (Ind.2014), and Fuller v. State, 9 N.E.3d 653 (Ind.2014), our Indiana Supreme Court summarized recent United States Supreme Court statements regarding the culpability of juvenile offenders. Those decisions addressed whether the sentences imposed on fifteen-year-old Fuller and sixteen-year-old Brown were inappropriate.
After noting the Indiana Constitution authorizes independent appellate review and revision of a trial court’s sentencing decision when the sentence is inappropriate in light of the nature of the offense and the character of the offender, Brown, 10 N.E.3d at 6, the Court addressed the effect of juvenile status on the character of each defendant. In Brown’s case, the Court said:
Finally — and most significantly— Brown was only sixteen years old at the time of the crime. We take this opportunity to reiterate what the United States Supreme Court has expressed: Sentencing considerations for youthful offenders — particularly for juveniles— are not coextensive with those for adults. See Miller v. Alabama, — U.S. -, 132 S.Ct. 2455, 2469, 183 L.Ed.2d 407 (2012) (requiring the sentencing judge to “take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison” (footnote omitted)). Thus, both at initial sentencing and on appellate review it is necessary to consider an offender’s youth and its attendant characteristics.
In holding death sentences and mandatory life without parole sentences for those under the age of eighteen to be unconstitutional, the United States Supreme Court has underpinned its reasoning with a general recognition that juveniles are less culpable than adults and therefore are less deserving of the most severe punishments. See Graham [v. Florida, 560 U.S. 48, 68, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010)]. This presumption that juveniles are generally less culpable than adults is based on previous and ongoing “ ‘developments in psychology and brain science’ ” which “ ‘continue to show fundamental differences between juvenile and adult minds’ ” in, for instance, “ ‘parts of the brain involved in behavior control.’ ” Miller, 132 S.Ct. at 2464 (quoting Graham, 560 U.S. at 68, 130 S.Ct. 2011). The Supreme Court has discerned “three significant gaps between juveniles and adults.” Id. First, “[a]s compared to adults, juveniles have a ‘lack of maturity and an underdeveloped sense of responsibility.’” Graham, 560 U.S. at 68, 130 S.Ct. 2011 (quoting Roper v. Simmons, 543 U.S. 551, 569, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (quotation omitted)). Second, “they ‘are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure,’ ” id, (quoting Roper, 543 U.S. at 569, 125 S.Ct. 1183), and “they have limited ‘contro[l] over their own environment’ and lack the ability to extricate themselves from horrific, crime-producing settings.” Miller, 132 S.Ct. at 2464 (alteration in original) (quoting Roper, 543 U.S. at 569, 125 S.Ct. 1183). Finally, “a child’s character is not as “well formed’ as an adult’s ... and his actions [are] less likely to be ‘evidence of irretrievabl[e] deprav[ity].’ ” Id. (alteration in original) (quoting Roper, 543 U.S. at 570, 125 S.Ct. 1183). “These salient characteristics mean that ‘[i]t is difficult even for expert psychologists to differ *967 entiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.”’ Graham, 560 U.S. at 68, 130 S.Ct. 2011 (alteration in original) (quoting Roper, 543 U.S. at 573, 125 S.Ct. 1183). Even justices not finding categorical Constitutional violations in these juvenile cases agree with this precept. See Graham, 560 U.S. at 90, 130 S.Ct. 2011 (Roberts, C.J., concurring in the judgment) (“Roper’s conclusion that juveniles are typically less culpable than adults has pertinence beyond capital cases.”); Roper, 543 U.S. at 599, 125 S.Ct. 1183 (O’Connor, J., dissenting) (“It is beyond cavil that juveniles as a class are generally less mature, less responsible, and less fully formed than adults, and that these differences bear on juveniles’ comparative moral culpability.”).
⅜: ⅝ ⅜ s|s ⅜
Similar to a life without parole sentence, Brown’s 150 year sentence “ ‘forswears altogether the rehabilitative ideal.’ ” Miller, 132 S.Ct. at 2465 (quoting Graham, 560 U.S. at 74, 130 S.Ct. 2011). Indeed, Brown’s sentence essentially “ ‘means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of the [juvenile] convict, he will remain in prison for the rest of his days.’ ” Graham, 560 U.S. at 70, 130 S.Ct. 2011 (quoting Naovarath v. State, 105 Nev. 525, 779 P.2d 944, 944 (1989)).
10 N.E.3d at 7-9. The Brown court affirmed Brown’s convictions and remanded so the trial court could issue an amended sentencing order. It reached the same result in Fuller after conducting the same analysis of juvenile culpability. But, significantly, the Court did not instruct the trial court to impose on Brown the same revised sentence it instructed the trial court to impose on Fuller:
In the case of sixteen-year-old Brown we employed our collective sense of what was an appropriate sentence and determined he “should receive an enhanced sentence of sixty years for each count of murder to be served concurrently and an enhanced sentence of twenty years for robbery to be served consecutively, for a total aggregate sentence of eighty years imprisonment.” Brown, [10 N.E.3d at 8]. We believe Fuller is entitled to a sentence revision as well. But we are not inclined to revise Fuller’s sentence to be precisely the same, or even less than that of his cohort. Although only a year older than Fuller, Brown unlike Fuller was an accomplice — a factor that we found particularly important. Instead Fuller was one of the actual shooters.
Fuller, 9 N.E.3d at 658-59. As noted above and in the lead opinion, in the case before us neither Layman nor Sparks was “the actual shooter” and neither could be characterized as an “accomplice” to the person who carried out the shooting except under the most expansive definition of that term.
In light of the rationale expressed by the Indiana and United States Supreme Courts as summarized in Brown and Fuller, I agree that Layman’s and Sparks’ sentences were inappropriate. But I believe the Brown and Fuller reasoning is instructive in the case before us, not just as pertains to their sentences, but also as to the basis for their culpability for felony murder.
Felony murder has been called “one of the most controversial doctrines in the field of criminal law.” See Erwin S. Bar-bre, Annotation, What felonies are inherently or foreseeably dangerous to human *968 life for purposes of felony-murder doctrine, 50 A.L.R.3d 397 (1973). That is because the primary function of the doctrine is to relieve the prosecution of the necessity of proving, and the jury of the necessity of finding, actual malice on the part of the defendant in the commission of the homicide. Id. In other words, under the felony-murder doctrine, the malice involved in the perpetration or attempted perpetration of the felony is “transferred” or “imputed” to the commission of the homicide so that the accused can be found guilty of murder even though the killing is accidental. Id.
One limitation of the felony-murder doctrine is that it applies only to felonies that are inherently or foreseeably dangerous to human life. Id. It is that “foreseeability” standard that concerns me in the case before us, where the defendants are not adults. In Indiana, the State need not prove that the defendant’s acts were the sole cause of death, only that the acts contributed, whether mediately or immediately, to the victim’s death. Sheckles v. State, 684 N.E.2d 201, 205 (Ind.Ct.App.1997), trans. denied. “Mediate” means “[t]o act as the intermediary or medium in effecting, bringing about, communicating, transferring, or the like.” Id. (quoting Webster’s New International Dictionary 1526 (2d ed. 1943)).
In light of the above definitions, a person who commits or attempts to commit an offense designated in the felony-murder statute is criminally responsible for a homicide that results from the act of one who was not a participant in the original criminal activity. Id. Where the accused reasonably should have foreseen that the commission of or attempt to commit the contemplated felony would likely create a situation that would expose another to the danger of death at the hands of a nonparticipant in the felony, and where death in fact occurs as was foreseeable, the creation of such a dangerous situation is a mediate contribution to the victim’s killing. Id.
Layman’s and Sparks’ automatic waiver into adult court subjected them to that reasonable foreseeability standard, and that raises concerns about the way we apply the felony murder statute to juveniles. Some juveniles convicted of felony murder did not kill and did not intend to kill. Arrington v. State, 113 So.3d 20, 24 (Fla.Dist.Ct.App.2012) review denied, 104 So.3d 1087 (Fla.2012). That appears to be the case with Layman and Sparks. “Foreseeability is a more complex issue, but it is reasonable to conclude that some juveniles involved as principals to murder or in felony murders did not foresee that a death was a possible outcome of their conduct.” Id.
Subjecting a juvenile who did not Mil or intend to Mil anyone to a murder prosecution in adult court based solely on the premise it was “foreseeable” to the juvenile that someone might be killed is problematic because juveniles do not “foresee” like adults do. As explained above, Fuller, Brotm, and a number of recent decisions from the United States Supreme Court have expanded on what has long been recognized — that the thought processes of adults and juveniles are fundamentally different and the justice system generally should not treat juveniles the same as adults. Therefore, “from a moral standpoint it would be misguided to equate the failings of a minor with those of an adult.” Roper, 543 U.S. at 570, 125 S.Ct. 1183. Further, defendants who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of the most serious forms of punishment than are murderers. Graham, 560 U.S. at 69, 130 S.Ct. 2011.
I am concerned that our application of the tort-like “foreseeability” standard to *969 juveniles waived into adult court and tried for felony murder is inconsistent with the reasoning our Indiana Supreme Court applied to sentencing review in Fuller and Brown and the United States Supreme Court decisions cited therein. The inherent differences between children and adults have been recognized in decisions applying tort standards similar to foreseeability. For example, in a determination whether a suspect is “in custody” for Miranda purposes, a child’s age might affect how a reasonable person in a suspect’s position would perceive his or her freedom to leave — that is, a reasonable child subjected to police questioning will sometimes feel pressured to submit when a reasonable adult would feel free to go. J.D.B. v. N. Carolina, — U.S.-, 131 S.Ct. 2394, 2403, 180 L.Ed.2d 310 (2011). “We think it clear that courts can account for that reality without doing any damage to the objective nature of the custody analysis.” Id.
These distinctions are not new:
The law has historically reflected the same assumption that children characteristically lack the capacity to exercise mature judgment and possess only an incomplete ability to understand the world around them. See, e.g., 1 W. Blackstone, Commentaries on the Laws of England 464^65 (hereinafter Blackstone) (explaining that limits on children’s legal capacity under the common law “secure them from hurting themselves by their own improvident acts”). Like this Court’s own generalizations, the legal disqualifications placed on children as a class — e.g., limitations on their ability to alienate property, enter a binding contract enforceable against them, and marry without parental consent— exhibit the settled understanding that the differentiating characteristics of youth are universal. Indeed, even where a “reasonable person” standard otherwise applies, the common law has reflected the reality that children are not adults. In negligence suits, for instance, where liability turns on what an objectively reasonable person would do in the circumstances, “[a]ll American jurisdictions accept the idea that a person’s childhood is a relevant circumstance” to be considered.
⅝ ⅜ sjj ⅜ ⅝
As this discussion establishes, “[o]ur history is replete with laws and judicial recognition” that children cannot be viewed simply as miniature adults.
Id. at 2403-04. The imposition of an adult “foreseeability” standard on juveniles prosecuted in adult court for felony murder reflects a disregard for that “history [of] judicial recognition that children cannot be viewed simply as miniature adults.” Id. at 2404.
Courts in other jurisdictions have recognized a partial solution to that dilemma. In considering the applicability of the felony-murder rule where, as here, the killing is committed by someone resisting the felony, numerous courts have adopted the view that for a defendant to be held guilty of murder, it is necessary that the act of killing be that of the defendant, and for the act to be his, it is necessary that it be committed by him or by someone acting in concert with him. See, e.g., Erwin S. Barbre, Annotation, Criminal Liability where Act of Killing is Done by One Resisting Felony or Other Unlawful Act Committed by Defendant, 56 A.L.R.3d 239 (1974). That approach is referred to as the “agency approach,” and it renders the felony-murder rule inapplicable where, as in the case before us, the killing is done by one resisting the felony. Id. The other approach, which Indiana courts have followed in cases involving adult felony murder defendants, permits a conviction where, as *970 here, any death is a foreseeable consequence of the felon’s acts, even if the killing is the result of a non-participant’s actions. It is referred to as the “proximate cause” theory. Id.
I acknowledge that our courts have not adopted the agency approach where the defendant is an adult, but I have found no decision that would foreclose application of that approach to a juvenile defendant. Adoption of the agency approach for juveniles would be consistent with our Supreme Court’s statement in its Fuller sentencing analysis: “Although only a year older than Fuller, Brown unlike Fuller was an accomplice — a factor that we found particularly important. Instead Fuller was one of the actual shooters.” Fuller, 9 N.E.3d at 658-59.
As the lead opinion’s outcome in the case before us is permitted by existing Indiana law, I must concur in the result. But I believe application of the agency approach to prosecutions of juvenile felony murder defendants, even though such defendants are subject to adult court jurisdiction, offers an approach more consistent with the spirit of Brown and Fuller than the “proximate cause” approach required by Palmer for adult felony murder defendants.