## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 26 2016, 9:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Lisa M. Johnson
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Paula J. Beller
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Timothy Weakley,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

October 26, 2016

Court of Appeals Case No.
49A02-1604-CR-739

Appeal from the Marion Superior Court

The Honorable Marc T. Rothenberg, Judge

Trial Court Cause No.
49G02-1501-F3-3212

**Crone, Judge.**

# Case Summary

Timothy Weakley appeals the sentence imposed by the trial court following his conviction for four counts of level 3 felony armed robbery and his adjudication as a habitual offender. The trial court sentenced Weakley to a fifty-eight-year aggregate sentence. Weakley contends that his sentence is inappropriate in light of the nature of the offenses and his character. Finding that Weakley has not met his burden to demonstrate that his sentence is inappropriate, we affirm.

# Facts and Procedural History

On January 25, 2015, Jamarlon King was working at the Family Dollar store on West 38th Street in Indianapolis. At approximately 9:30 a.m., Weakley entered the store and walked to the candy section. After picking up some candy, he walked to the register as if to be checked out. Instead, he threw the candy onto the cash register and pointed a handgun at King. Weakley said to King, "Give me the motherf**king money." Tr. at 18. As King tried to open the cash register, Weakley ordered, "Hurry the f**k up, hurry the f**k up." *Id*. King observed that Weakley was standing in a "shooter's stance … with one leg back and one leg out like he was going to shoot." *Id*. at 21. King dumped the contents of the register into a store bag. King thought that Weakley was going to shoot him before leaving the store. As Weakley walked out, he turned around and said to King, "You better not follow me bitch." *Id*. Weakley left with approximately $168 from the store.

[3]     At around 2:15 p.m. that same day, Kyana Booker was working as a cashier at the Dollar General store on North College Avenue. Weakley entered the store, pulled out a gun, and pointed it at Booker. Weakley called Booker a bitch and said, "If you don't get the money out I'm gonna kill you." *Id*. at 31. Booker gave Weakley the money, and he left the store with between $100 and $200.

[4]     Just before 8:00 p.m. that night, Calvin Bumphus was working as the assistant manager at the Burger King restaurant on North Illinois Street. Bumphus saw Weakley enter the restaurant and sit down in the dining area. Bumphus noticed that Weakley was carrying "a pop bottle and [a] yellow Dollar General bag." *Id*. at 45. Weakley went into the restroom and then approached the counter and ordered a sandwich. Once the register "popped open," Weakley pointed a gun in Bumphus's face and said, "[G]ive me the money or I kill you." *Id*. at 48. Bumphus backed away from the register, and Weakley reached in and grabbed everything out of the drawer, which amounted to about $40 or $50.

[5]     The next day, January 26, 2016, Kashinda Banks was working at the Family Dollar store on East 38th Street. At around 9:00 a.m., Weakley entered the store, selected some clothing items, and placed them on the counter to purchase. As Banks looked at Weakley, she felt that he was "evil" and "the way he cut his eyes at me it just didn't feel right." *Id*. at 61. After Banks scanned the items and told Weakley the total amount owed, Weakley pulled a gun out of his pocket, cursed at Banks, and told her to give him all the money in the drawer. Because Banks was so frightened, Weakley kept calling her "the

B word," told her repeatedly to hurry, and threatened to hurt her if she did not comply. Banks handed Weakley approximately $106 in cash and coins.

[6] Indianapolis Metropolitan Police Department Sergeant Paul Wilson responded to the robbery of the Family Dollar store where Banks worked. After viewing the video surveillance from the store which depicted Weakley committing the crime, Sergeant Wilson used his cell phone to take a still photograph of Weakley. Later that afternoon, Sergeant Wilson spotted Weakley walking. When Weakley noticed that Sergeant Wilson was following him, he took off running. Police set up a perimeter in the neighborhood and eventually located and apprehended Weakley. Sergeant Wilson brought Banks to the location where police had apprehended Weakley, and she positively identified Weakley as the person who robbed the store.

[7] The State charged Weakley with four counts of level 3 felony armed robbery and one count of level 4 felony unlawful possession of a firearm by a serious violent felon. The State also charged Weakley with being a habitual offender. A jury trial was held on February 29 and March 1, 2016. The State dismissed the level 4 felony count, and the jury found Weakley guilty of four counts of level 3 felony robbery. Thereafter, Weakley pled guilty to being a habitual offender. Following a sentencing hearing, the trial court imposed consecutive terms of thirteen years for each level 4 felony conviction, and six years on the habitual offender enhancement, for an aggregate sentence of fifty-eight years. This appeal ensued.

# Discussion and Decision

Weakley claims that his sentence is inappropriate and invites this Court to reduce his sentence pursuant to Indiana Appellate Rule 7(B) which provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence "is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden to persuade this Court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." *Id.* at 1225. Appellate review "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Id.* at 1224.

Regarding the nature of the offenses, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Fuller v. State*, 9 N.E.3d 653, 657 (Ind. 2014). The sentencing range for a level 3 felony is between three and sixteen years, with an advisory sentence of nine years. Ind. Code § 35-50-2-5. Thus, not including the habitual offender

enhancement, Weakley faced a maximum possible sentence of sixty-four years' imprisonment for his four level 3 felony robbery convictions. The trial court chose to impose consecutive terms of thirteen years on each count, resulting in a combined sentence of fifty-two years. Due to Weakley's guilty plea to the habitual offender charge, the trial court imposed the minimum possible term of six years for the habitual offender enhancement, resulting in an aggregate term of fifty-eight years.[1]

[10] Weakley has not demonstrated that a reduction in his sentence is warranted based upon the nature of the offenses. To the extent Weakley argues that consecutive and/or enhanced sentences are inappropriate here, we disagree as the existence of multiple crimes and victims justifies the imposition of consecutive and enhanced sentences. *See Serino v. State*, 798 N.E.2d 852, 857 (Ind. 2003) (noting that enhanced and consecutive sentences "seem necessary to vindicate the fact that there were separate harms and separate acts against more than one person"). Still, Weakley maintains that the nature and circumstances of his offenses "were not unusually heinous." Appellant's Br. 13. Be that as it may, the nature and circumstances of his offenses were not unusually minor either. Weakley, while armed with a deadly weapon, not only took property from four different people by threatening the use of force *or* putting them in fear

---

[1] The sentencing range for the habitual offender enhancement is between six and twenty years for a person convicted of murder or a level 1 through level 4 felony. Ind. Code § 35-50-2-8(i)

as required by statute, he did *both*.[2] Each of his victims testified at trial and recounted how Weakley pointed a gun right in their faces and how that put them in fear. Three of his victims stated that he also verbally threatened to kill them if they refused to comply with his demands for money. Under the circumstances, Weakley has failed to convince us that we should not defer to the trial court's determination of an appropriate aggregate sentence.

[11] Weakley's character does not warrant a different result. When considering the character of the offender, one relevant consideration is the defendant's criminal history. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). Weakley's extensive criminal history began with a larceny conviction more than twenty-eight years ago in Michigan. He has been convicted countless times since then, at least ten of those convictions involving felonies. He was on parole for felony burglary when he committed the current offenses. Although Weakley argues that he accepted responsibility for his current crimes by voluntarily surrendering to police and giving a full confession, we note that the record belies his assertions and indicates that he initially ran from police to avoid capture, and that he further initially denied committing the robberies until confronted with video evidence. Weakley also points to his alleged post-traumatic stress disorder diagnosis, his troubled childhood, his substance abuse, and his expressed remorse as reasons for leniency. However, it was within the

---

[2] "A person who knowingly or intentionally takes property from another person or from the presence of another person (1) by using or threatening the use of force on any person; or (2) by putting any person in fear; commits robbery, a Level 5 felony." Ind. Code § 35-42-5-1. The offense becomes "a Level 3 felony if it is committed while armed with a deadly weapon …." *Id.*

trial court's discretion to consider these factors in tailoring a sentence, and under the circumstances presented, Weakley has not met his burden to demonstrate that the aggregate sentence imposed here is inappropriate. Accordingly, we affirm.

[12]   Affirmed.

Kirsch, J., and May, J., concur.