## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 26 2016, 8:56 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Amber M. Neal
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brian L. Blevins, Sr., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | October 26, 2016 <br><br> Court of Appeals Case No. <br> 18A05-1603-CR-714 <br><br> Appeal from the Delaware Circuit Court <br><br> The Honorable Linda Ralu Wolf, Judge <br><br> Trial Court Cause No. <br> 18C03-1304-FA-03 |

**Crone, Judge.**

# Case Summary

Brian L. Blevins, Sr., appeals his conviction for class A felony conspiracy to commit murder following a jury trial. He contends that the evidence is insufficient to support his conviction and that the forty-year sentence imposed by the trial court is inappropriate in light of the nature of the offense and his character. Finding the evidence sufficient and that Blevins has not met his burden to demonstrate that his sentence is inappropriate, we affirm.

# Facts and Procedural History

In February 2013, Billy Hartman's residence in Eaton was burglarized. Approximately $30,400 in cash was taken from a safe in the home and several firearms were stolen. Blevins was arrested for that crime, booked into the Delaware County Jail, and placed in cell block D. While in jail, Blevins became acquainted with Jeffrey Markham, who had been arrested a few months earlier for battery with a deadly weapon and had also been placed in cell block D.

Blevins and Markham spent a considerable amount of time talking in order to "pass the time." Tr. at 119. Markham told Blevins that he hoped to get a job driving taxi cabs in Muncie when he was released from jail. Blevins told Markham that he knew a guy that owned a taxi cab company in Muncie "that always carried a lot of money and what an easy mark he would be to rob." *Id*. at 121. While Blevins talked about robbery at first, his focus quickly turned to murder. Blevins explained to Markham about how the cab company owner

"was a pretty large fella, you'd have to subdue him somehow and then that progressed [to] … you'd have to kill the man." *Id.* Blevins discussed with Markham how Markham could accomplish a robbery, and the plan went from Markham shooting the owner "in the leg" to subdue him, to shooting him "in the head." *Id.* at 122. Blevins eventually told Markham that the name of the intended victim was Billy Hartman, the individual whose home Blevins had recently been arrested for burglarizing. Blevins told Markham that he would probably need to kill Hartman, his wife, and his seven-year-old granddaughter who lived in the home as well.

[4] Over the next month, Blevins continued to try to enlist Markham's help to rob and murder Hartman. He gave several handwritten notes to Markham stating that he was "dead serious" about wanting Markham to help him. State's Ex. 5. He told Markham that Markham would have to be "ruthless most likely" and stated, "[I] don't care if you got to take out the whole family LOL." State's Exs. 3, 5. In one note, Blevins questioned Markham's desire to participate in the crimes and asked Markham for assurances that he wasn't going to "screw" Blevins. State's Ex. 2. Blevins told Markham that he had found someone else in the jail that would commit the crimes if Markham would not, but told Markham that he just "felt better" about Markham doing it. *Id.* Markham responded to the note, reassuring Blevins "I AM REAL!!! Not my 1st Rodeo." *Id.*

[5] Once Blevins was satisfied that Markham had agreed to participate in the crimes, Blevins told him that he would call his parents so that they would come

post bail for Markham. Blevins told Markham that on the night of his release, he should go straight to Hartman's residence and kill him and his family. Blevins instructed Markham to then come back and stand outside the jail at midnight and signal Blevins with a "thumbs up that the job was done." Tr. at 133. Blevins told Markham that his "cut was going to be a third" of whatever money was stolen, but instructed him that he would need to give some of the money to Blevins's parents and that he should give the rest to Blevins's girlfriend to hold until Blevins was released from jail. *Id*. at 125. Blevins said he would "divvy up the funds" with Markham after his release. *Id*. Blevins drew Markham a map to show him exactly where Hartman lived in Eaton. State's Ex. 1.

[6] On April 3, 2013, Markham decided that he wanted no part in Blevins's plan, so he informed guards at the jail that he needed to talk to someone. Markham met with Delaware County Sheriff's Investigator Kurt Walthour and told him what Blevins was planning. Investigator Walthour wired Markham with a recording device and sent him back to cell block D. Markham and Blevins continued to discuss the details of the plan, including how Markham would enter Hartman's residence and kill Hartman and his family. State's Ex. 6 & 7. Markham asked Blevins numerous times whether he was sure that he wanted "them all dead." Tr. at 151. "Every single time, without fail, [Blevins] said yes …." *Id*. Later that day, Blevins called his father from the jail, and on April 4, 2013, Blevins's father posted bail for Markham.

The State charged Blevins with class A felony conspiracy to commit murder. Following a trial, the jury found Blevins guilty as charged. The trial court imposed a forty-year sentence. This appeal ensued.

## Discussion and Decision

## Section 1 – The evidence is sufficient to support Blevins's conviction.

Blevins first contends that the State presented insufficient evidence to support his conviction. When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor assess witness credibility. *Bell v. State*, 31 N.E.3d 495, 499 (Ind. 2015). We look to the evidence and reasonable inferences drawn therefrom that support the verdict and will affirm if there is probative evidence from which a reasonable factfinder could have found the defendant guilty beyond a reasonable doubt. *Id*. In short, if the testimony believed by the trier of fact is enough to support the verdict, then the reviewing court will not disturb the conviction. *Id*. at 500.

The charging information here provided as follows:

> The undersigned says that between March 1, 2013, and April 4, 2013, in Delaware County, State of Indiana, Brian Lee Blevins Sr. did knowingly agree with another person or persons, to-wit: Jeff Markham or other unnamed co-conspirators, to commit the crime of murder, and either Blevins or the other person or persons with whom he agreed did perform one or more overt acts in furtherance of the agreement, to-wit:
> 1. exchange handwritten notes;
> 2. drew a map;

3.  possessed a map;

4.  called Ovia Blevins;

5.  made arrangements to bail Jeff Markham out of jail, contrary to the form of the statutes in such cases made and provided by I.C. 35-42-1-1(1) and I.C. 35-41-5-2 and against the peace and dignity of the State of Indiana.

Appellant's App. Vol. II at 21. Indiana Code Section 35-41-5-2 provides in relevant part,

> (a) A person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony. A conspiracy to commit a felony is a felony of the same class as the underlying felony. However, a conspiracy to commit murder is a Class A felony.

> (b) The state must allege and prove that either the person or person with whom he agreed performed an overt act in furtherance of the agreement.

Further, Indiana Code Section 35-42-1-1 provides that a person who "knowingly or intentionally kills another human being … commits murder, a felony."

[10] Accordingly, to convict Blevins of conspiracy to commit murder, the State had to prove beyond a reasonable doubt that Blevins, (1) with the intent to commit murder, (2) agreed with Markham to commit murder, and (3) either Blevins or Markham performed an overt act in furtherance of the agreement. *See* Ind. Code § 35-41-5-2. The State need not "present direct evidence of a formal express agreement. The agreement as well as the requisite guilty knowledge and

intent may be inferred from circumstantial evidence alone, including overt acts of the parties in pursuance of the criminal act." *Erkins v. State*, 13 N.E.3d 400, 407 (Ind. 2014) (citation omitted).

[11] Here, Markham gave detailed testimony regarding his agreement with Blevins to rob and murder Hartman, and the numerous overt acts that they each performed in furtherance of that agreement, including the exchange of handwritten notes, a map drawn by Blevins with directions to Hartman's residence, and Blevins's call to his father to arrange to have Markham bailed out of jail. Blevins concedes that there was sufficient evidence to establish that he conspired with Markham to commit robbery or burglary, but maintains that there was insufficient evidence that he conspired to commit murder. Essentially, Blevins contends that the plan to commit murder was Markham's plan alone. Blevins's argument is merely a request for this Court to reweigh the evidence and reassess witness credibility, which we cannot do. In short, based upon Markham's unequivocal testimony and the circumstantial evidence presented, a reasonable factfinder could have found Blevins guilty beyond a reasonable doubt of conspiracy to commit murder. The evidence is sufficient to support his conviction.

## Section 2 – Blevins has not met his burden to demonstrate that his sentence is inappropriate.

[12] Blevins next claims that his sentence is inappropriate and invites this Court to reduce his sentence pursuant to Indiana Appellate Rule 7(B) which provides that we may revise a sentence authorized by statute if, after due consideration

of the trial court's decision, we find that the sentence "is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden to persuade this Court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." *Id.* at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Id.* at 1224.

[13] Regarding the nature of the offenses, the advisory sentence is the starting point that the legislature has selected as an appropriate sentence for the crime committed. *Fuller v. State*, 9 N.E.3d 653, 657 (Ind. 2014). The sentencing range for a class A felony is between twenty and fifty years, with an advisory sentence of thirty years. Ind. Code § 35-50-2-4. The trial court here imposed an aggravated sentence of forty years.

[14] As for the nature of the offense, the evidence indicates that Blevins sought out Markham to enlist his help with the plan to rob and murder Hartman. Blevins worked hard to cultivate a relationship with Markham and then, for more than a month, continued to plan with and instruct Markham on how to carry out the scheme. The plan included the murder of not just Hartman, but his whole

family if necessary. Blevins's apparent motive was pure greed, and perhaps the desire to eliminate Hartman as the main witness against him in a pending case. Nothing about the nature of this offense warrants a reduction in Blevins's forty-year sentence.

[15] Blevins does not fare much better regarding his character. When considering the character of the offender, one relevant consideration is the defendant's criminal history. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). Blevins has a moderately lengthy criminal history consisting of both felony and misdemeanor convictions involving crimes of violence. Indeed, he was in jail and on probation for a felony conviction when he committed the instant offense. Blevins's history demonstrates his utter disdain for the law and does not reflect favorably upon his character. Moreover, Blevins was clearly the principal in this serious crime and was calling all the shots. While Blevins attempts to excuse his past and present behavior by pointing to his longstanding untreated substance abuse problem, we defer to the trial court's decision to attribute minimal mitigating weight to this circumstance. Blevins has not persuaded us that a sentence reduction is warranted based upon his character.

[16] In sum, the State presented sufficient evidence to support Blevins's conviction, and he has not met his burden to establish that the forty-year sentence imposed by the trial court is inappropriate. We therefore affirm his conviction and sentence.

[17] Affirmed

Kirsch, J., and May, J., concur.