## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 04 2017, 8:31 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Hilary Bowe Ricks
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kennan Dumas, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | October 4, 2017 <br><br> Court of Appeals Case No. <br> 49A04-1703-CR-577 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Alicia Gooden, Judge <br><br> The Honorable Richard Hagenmaier, Commissioner <br><br> Trial Court Cause No. <br> 49G21-1610-F4-41901 |

**Crone, Judge.**

# Case Summary

[1] Kennan Dumas appeals the twelve-year sentence imposed by the trial court after a jury convicted him of level 4 felony possession of a firearm as a serious violent felon. He contends that his sentence is inappropriate in light of the nature of the offense and his character. Concluding that he has not met his burden to demonstrate that his sentence is inappropriate, we affirm.

# Facts and Procedural History

[2] On October 23, 2016, Indianapolis Metropolitan Police Department ("IMPD") Officer Samuel House was dispatched to an address on North Grant Avenue in response to a report of "a person assaulted with shots fired." Tr. at 109-10. When Officer House arrived, he encountered Michael Bennett sitting on the front porch of the residence. Based on his conversation with Bennett, Officer House determined that there was another individual with whom he needed to speak. Officer House walked around the left side of the residence to a side entrance with a separate address written on it. The other individual Officer House was looking for was not present at the residence, so Officer House told Bennett to call if there were "any other issues or if the individual comes back." *Id*. at 111. Officer House then left the scene.

[3] A few hours later, at approximately 3:50 a.m., IMPD Officer Brian Sosbe was dispatched to the same address on a "disturbance call." *Id*. at 117-18. Officer Sosbe was aware that there had been a previous report that morning of shots fired at that address. Officer Sosbe encountered two men sitting on the front

porch. As he was speaking to those men, Officer Sosbe heard the sound of a door slamming on the left side of the residence. When Officer Sosbe walked around the left side of the residence, he saw a man, later identified as Dumas, in the side yard. Officer Sosbe activated the flashlight attached to his firearm, identified himself, and ordered Dumas to stop and show his hands.

[4] Dumas briefly raised his hands above his waist, but then "immediately turned and ran to the door" on the left side of the residence and went inside. *Id*. at 123. Dumas slammed the door and locked the deadbolt behind him. Officer Sosbe heard a "loud thud" that "sounded like a heavy metallic object hitting the floor" just inside the door. *Id*. at 124. Because Officer Sosbe "took the sound of that thud being a gun," he backed slowly away from the door, assumed a defensive position, and called for backup. *Id*. at 125.

[5] About a minute later, Dumas exited the residence and Officer Sosbe placed him in handcuffs. Noticing that there was also a female just inside the door, Officer Sosbe ordered her to come outside. While Dumas was handcuffed on the ground, he yelled repeatedly to the female, "Don't talk to them. Don't tell them nothing. Don't let them in the house." *Id*. at 126. Officers discovered that the female, Breanna Benner, was the owner of the residence. While on the scene, Benner signed a consent to search form after being advised of her rights. During a search of the residence, officers discovered two handguns underneath a metal grate just inside the door. Dumas had a prior conviction for class B felony dealing in cocaine or a narcotic drug, so it was illegal for him to possess a firearm.

The State charged Dumas with level 4 felony possession of a firearm as a serious violent felon, level 5 felony battery, and level 6 felony criminal recklessness. The State later dismissed two of the charges and a jury trial proceeded on the level 4 felony. The jury found Dumas guilty as charged.[1] Following a hearing, the trial court sentenced Dumas to twelve years, with four years suspended, two of which were to be served on probation. This appeal ensued.

## Discussion and Decision

Dumas claims that his sentence is inappropriate and invites this Court to revise his sentence pursuant to Indiana Appellate Rule 7(B), which provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence "is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden to persuade this Court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." *Id*. at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime,

---

[1] Dumas stipulated to having a prior class B felony conviction for dealing in cocaine or a narcotic drug.

the damage done to others, and myriad other facts that come to light in a given case." *Id*. at 1224. We consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence is ordered suspended "or otherwise crafted using any of the variety of sentencing tools available to the trial judge." *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010). In conducting our review, we do not look to see whether the defendant's sentence is appropriate or "if another sentence might be *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *Fonner v. State*, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007).

[8] Regarding the nature of the offense, the advisory sentence is the starting point that the legislature has selected as an appropriate sentence for the crime committed. *Fuller v. State*, 9 N.E.3d 653, 657 (Ind. 2014). The sentencing range for a level 4 felony is between two and twelve years, with the advisory sentence being six years. Ind. Code § 35-50-2-5.5. The trial court here imposed the maximum sentence of twelve years, with four years suspended.

[9] Dumas complains that he should not have received the maximum sentence for his crime because, although he did unlawfully possess weapons, he never "openly" displayed a weapon "on his person." Appellant's Br. at 15. He also posits that by exiting the residence and succumbing to Officer Sosbe's demands, he avoided creating a "SWAT situation." *Id*. However, the record indicates that Dumas is not simply a defendant with a prior felony conviction who had the misfortune of being found in unlawful possession of a firearm. Rather, after being confronted by Officer Sosbe, Dumas initially fled and retreated into the

residence to hide his weapons. When Dumas later exited the residence, he belligerently yelled to Benner to not allow police to search the home. We are not persuaded that the nature of this offense warrants a sentence reduction.

[10] In any event, Dumas's character alone supports the sentence imposed by the trial court. When considering the character of the offender, one relevant fact is the defendant's criminal history. *Sanders v. State*, 71 N.E.3d 839, 844 (Ind. Ct. App. 2017). Dumas has an extensive criminal history, including numerous juvenile adjudications, six prior felony convictions, and several prior misdemeanor convictions. He has been granted the leniency of probation on numerous occasions, only to have that probation revoked multiple times. Indeed, he was on probation when he committed the current offense. Dumas's refusal to alter his criminal behavior reflects poorly on his character.

[11] Nevertheless, Dumas emphasizes evidence of his past substance abuse and asserts that the trial court should have recommended his placement in "Purposeful Incarceration so [that he] could begin working on his addictions and the underlying issues that feed[] them…." Appellant's Br. at 17. This Court has recognized that it is quite difficult for a defendant to prevail on a claim that the placement of his sentence is inappropriate. *Fonner*, 876 N.E.2d at 343. "As a practical matter, trial courts know the feasibility of alternative placements in particular counties or communities." *Id.* That is, "a trial court is aware of the availability, costs, and entrance requirements of community corrections placements in a specific locale." *Id.* at 343-44. Moreover, because our appellate review is focused not on whether another sentence might be more

appropriate, but on whether the sentence imposed is inappropriate, a "defendant challenging the placement of a sentence must convince us that the given placement is itself inappropriate." *Id*. at 344. Here, rather than placing Dumas in Purposeful Incarceration, the trial court ordered substance-abuse treatment as a condition of Dumas's probation to be completed following his eight-year executed sentence. Dumas has not demonstrated that this placement is itself inappropriate.[2]

Dumas has not met his burden to demonstrate that the sentence imposed by the trial court is inappropriate in light of the nature of the offense or his character. Accordingly, we affirm.

Affirmed.

Vaidik, C.J., and Mathias, J., concur.

---

[2] We note that the presentence investigation report indicates that Dumas does not believe that he has a substance abuse problem. Appellant's Conf. App. at 131.