ATTORNEY FOR APPELLANT
David W. Stone IV
Stone Law Office and Legal Research
Anderson, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

_____

# In the
# Indiana Supreme Court



FILED

CLERK
of the supreme court,
court of appeals and
tax court

_____

No. 48S02-1406-CR-363

MARTEZ BROWN,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

_____

Appeal from the Madison Circuit Court, No.48C01-1012-MR-00783
The Honorable David A. Happe, Judge

_____

On Petition To Transfer from the Indiana Court of Appeals, No. 48A02-1212-CR-1007

_____


**June 2, 2014**


**Rucker, Justice.**

Martez Brown appeals his 150-year sentence imposed for two counts of murder and one count of robbery. Exercising our constitutional authority we revise Brown's sentence.

**Facts and Procedural History**

Sometime during the late evening hours of Friday, November 26 and the early morning hours of Saturday, November 27, 2010, three teenagers—eighteen-year-old Na-Son Smith, sixteen-year-old Martez Brown, and fifteen-year-old Jacob Fuller—robbed Stephen Streeter and his girlfriend Keya Prince in their Anderson home. Streeter and Prince were shot and killed during the robbery, and Brown and his friends absconded with several thousand dollars in cash, several pounds of marijuana, two video game systems, two flat-screen televisions, and a 9mm handgun. The bodies of Streeter and Prince were discovered the following Monday when police conducted a welfare check at their home. In the days following the crime Brown sold the stolen 9mm handgun, which eventually made its way into the hands of police investigating the murders.

Approximately four days after the victims' bodies were discovered, Brown was arrested in connection with the crime and gave police a statement—which he subsequently recanted when called as a witness during Fuller's trial—implicating himself, Fuller, and Smith in the double killings. Specifically Brown explained that he, Fuller[1] and Smith had targeted Streeter because they heard he was a drug dealer and kept large amounts of cash. See State's Ex. 172 (Tr. of Brown's Interview at 24-25). According to Brown, Fuller drove the three of them to Streeter's house; each of the teenagers was armed with a gun; and the trio entered the house, bound Streeter, and grabbed Prince. While Brown was "looking for money and the bud," Fuller shot Prince once in the chest. Id. at 29. According to Brown, shortly thereafter Smith shot Streeter once in the back of the head. Brown told police his friends shot the victims because they were afraid of being recognized. After the robbery Brown and his cohorts went on a shopping spree in which they spent the proceeds. They were later identified in a Walmart surveillance video during one of these excursions. And police later recovered photographs retrieved from the cell

---

[1] Fuller also seeks revision of his sentence for these crimes, which we address separately today in Fuller v. State, No. 48S02-1406-CR-364, ___ N.E.3d ___ (Ind. 2014).

2

phones of Smith and Fuller taken shortly after the crime depicting the trio displaying large amounts of cash. State's Ex. 157a.

The State charged Brown with two counts of murder, one count of robbery as a Class A felony, one count of burglary as a Class A felony, and one count of theft as a Class D felony. The State also sought a sentence of life imprisonment without parole. Although the record is not entirely clear, it appears that Brown at one point entered a plea agreement with the State that was either withdrawn or not accepted by the trial court. In any event Brown eventually waived his right to trial by jury and his three-day bench trial began October 30, 2012, at the conclusion of which the State moved to dismiss the burglary charge and its request for a sentence of life without parole. The trial court granted the motion and found Brown guilty of the remaining charges. At the sentencing hearing the trial court reduced the robbery conviction to a Class B felony because of double jeopardy concerns and did not enter judgment for theft finding it a lesser included offense of the robbery. After recounting and weighing the aggravating and mitigating factors the trial court ultimately sentenced Brown to the maximum term of sixty-five years for each murder and the maximum term of twenty years for the robbery, all to be served consecutively, resulting in an aggregate sentence of 150 years.

Brown appealed raising several claims including the appropriateness of his sentence, all of which the Court of Appeals rejected. See Brown v. State, No. 48A02-1212-CR-1007 (Ind. Ct. App. July 30, 2013). We now grant Brown's petition to transfer to address his appropriateness claim. In all other respects we summarily affirm the opinion of the Court of Appeals. See Ind. Appellate Rule 58(A)(2). Additional facts are set forth below.

**Discussion**

Typically, the juvenile court has jurisdiction over sixteen-year-old teenagers like Brown. However, in the case of some crimes—including murder and robbery—"[t]he juvenile court does not have jurisdiction over an individual . . . [who] was at least sixteen (16) years of age at the time of the alleged violation." I.C. § 31-30-1-4(a). It is by virtue of this statute that Brown was tried as an adult. The sentencing range for an adult convicted of murder is forty-five to sixty-five

3

years, with the advisory sentence being fifty-five years.[2] I.C. § 35-50-2-3(a). The sentencing range for Class B felony robbery is six to twenty years, with the advisory sentence being ten years. I.C. § 35-50-2-5. In addition, the trial court has discretion to "determine whether terms of imprisonment shall be served concurrently or consecutively . . . [and] may consider" aggravating and mitigating circumstances in making such a determination. I.C. § 35-50-1-2(c).

At the sentencing hearing, before imposing sentence the trial court commented: "This is a community tragedy. It's a significant community tragedy and it requires a powerful response and my job, my role here is to act as the voice of the community and tell you what the community thinks about what you've done." Tr. at 429-30. The trial court then considered the aggravating and mitigating factors. In aggravation the court identified the following: (1) two people were killed; (2) Brown's history of criminal and delinquent activity; (3) the offenses were committed in the presence of a person under eighteen years of age (cohort Jacob Fuller who was fifteen); (4) Brown had recently violated probation; and (5) that Brown conspired with his co-defendants to commit the offenses. Tr. at 430. In mitigation, the trial court found: (1) Brown initially cooperated with law enforcement by giving a statement; and (2) Brown's young age. Tr. at 431. The trial court then imposed the maximum sentence possible: Sixty-five years for Streeter's murder, plus sixty-five years for Prince's murder, plus twenty years for the robbery, all to be served consecutively.

The trial court certainly acted well within its broad discretion in imposing this sentence. But see infra note 3. However, "[e]ven where a trial court has not abused its discretion in sentencing, the Indiana Constitution authorizes independent appellate review and revision of a trial court's sentencing decision." Pierce v. State, 949 N.E.2d 349, 352 (Ind. 2011) (citing Ind. Const. art. 7, §§ 4, 6; Anglemyer v. State, 868 N.E.2d 482, 491 (Ind. 2007), clarified on reh'g by 875 N.E.2d 218). We implement this authority through Indiana Appellate Rule 7(B), which provides that we may "'revise a sentence authorized by statute if, after due consideration of the

---

[2] Subsequent to Brown's sentencing, the Indiana Legislature enacted statutes providing courts with greater flexibility in choosing sentencing alternatives where juveniles under the age of eighteen are outside the jurisdiction of the juvenile court or are waived to adult court. See Pub. L. No. 104-2013, §§ 1 and 2, 2013 Ind. Acts 766-71 (codified at Ind. Code §§ 31-30-4-1, -7 (2013) and Ind. Code § 35-50-2-17 (2013)).

trial court's decision'" we find "'the sentence is inappropriate in light of the nature of the offense and the character of the offender.'" Anglemyer, 868 N.E.2d at 491 (quoting App. R. 7(B)). Whereas prior to 2003 our authority to revise was confined to cases in which the sentence was "*manifestly unreasonable* in light of the nature of the offense and the character of the offender," see App. R. 7(B) (2002) (emphasis added), the current rule reflects our "modest steps to provide more realistic appeal of sentencing issues." Serino v. State, 798 N.E.2d 852, 856 (Ind. 2003). Today's Rule 7(B) "places central focus on the role of the trial judge, while reserving for the appellate court the chance to review the matter in a climate more distant from local clamor." Id. at 856-57.

In considering the nature of the offense we recognize the advisory sentence is the starting point the Legislature selected as appropriate for the crime committed. See Anglemyer, 868 N.E.2d at 494. The trial court ultimately imposes a sentence based on the aggravating and mitigating circumstances it finds. However, in analyzing a claim under Appellate Rule 7(B), we are not limited to the mitigators and aggravators found by the trial court.

### Nature of the offense

The record in this case reveals two circumstances we find important with respect to the nature of Brown's offense.

First, and particularly important, although receiving the same maximum sentence as his two cohorts, Brown was apparently found guilty of both murders as an accomplice. As the prosecutor noted in closing argument, "the evidence suggests and probably indicates [Brown] did not kill anybody himself." Tr. at 409. "The evidence in this case suggests he probably was not [one of] the murderers. Not one of the persons that actually pulled the trigger and took a life himself." Id. However, the prosecutor correctly contended: "[Brown is] still guilty under the theory of accompli[ce] liability." Id. Recently in Castillo v. State, we recognized that the "nature of the offense . . . provides the strongest consideration in favor of revising the defendant's sentence" where "the evidence was insufficient for a reasonable jury to conclude that the defendant knowingly or intentionally killed the victim but . . . sufficient for the jury to find

5

her guilty as an accomplice." 974 N.E.2d 458, 463 (Ind. 2012) (footnote omitted). In that case Engelica Castillo was sentenced to life imprisonment without parole for her role in her boyfriend's beating death of a two-year-old child in her care. In revising Castillo's sentence to sixty-five years we relied in part on our case authority which acknowledged "[w]hile an accomplice may be found guilty of the crime largely executed by his principal, it does not follow that the same penalty is appropriate." Id. at 467 (alteration in original) (quoting Martinez Chavez v. State, 534 N.E.2d 731, 735 (Ind. 1989)). Cf. Graham v. Florida, 560 U.S. 48, 69 (2010) ("[W]hen compared to an adult murderer, a juvenile offender who did not kill or intend to kill has a twice diminished moral culpability.")

Our second observation is that although senseless and reprehensible, the murders in this case were not particularly heinous. This Court has declared that a murderer is deserving of an enhanced sentence under facts where "the nature of the killings are brutal." Taylor v. State, 840 N.E.2d 324, 341 (Ind. 2006). In Taylor, the defendant alleged his appellate counsel was ineffective for failing to, among other things, challenge his maximum sixty-year sentence on the basis that the aggravators were improper, specifically the aggravator that the crime was particularly heinous. In that context we observed that the crime at issue—accomplice murder by single gunshot to the heart, taking place in the victim's home, the motive of which was to collect money from the victim—did not warrant an enhancement for heinousness. See id. at 341-42 (contrasting Taylor's crime with cases in which the death was "painful and torturous to the victim," in which a defendant "killed his parents in front of his nine-year-old sister," and in which "the murder resulted from the aggravated burglary of a 92-year-old man who was confined to his hospital bed") (citations omitted)). In this case there is no evidence that the victims were tortured, beaten, or lingered in pain. Although the trial court here did not explicitly identify heinousness as an aggravating factor, we find this factor relevant in our determination of the appropriateness of Brown's sentence under Appellate Rule 7(B).[3]

_____

[3] The deaths of Streeter and Prince were no doubt tragic events within the Anderson community and beyond. But we are disquieted by the trial court's statement, "[i]t's a significant community tragedy and it requires a powerful response and my job, my role here is to act as the voice of the community and tell you what the community thinks about what you've done." Tr. at 429-30. As this Court has recently declared, we "disapprove of consideration of a community's outrage in the determination or review of a criminal sentence." Escobedo v. State, 989 N.E.2d 1248, 1248 (Ind. 2013) (responding to the Court of Appeals' statement that "the maximum sentence [for Escobedo] can be justified as a deontological

**Character of the offender**

The presentence report reflects that the instant offenses are the first for which Brown was charged as an adult. See App. at 64. And although Brown has a lengthy history of juvenile adjudications, the only violent offense appears to be a 2009 battery incident. See id. at 63. Although not reflecting favorably upon Brown's character, Brown's offenses do not appear particularly grave and more importantly are not related to his murder convictions. See, e.g., Wooley v. State, 716 N.E.2d 919, 929 n.4 (Ind. 1999) (recognizing that the significance of a criminal history in sentencing "varies based on the gravity, nature and number of prior offenses as they relate to the current offense"). See also Ruiz v. State, 818 N.E.2d 927, 929 (Ind. 2004) (concluding that history of four alcohol-related misdemeanors did not support aggravation of sentence for Class B felony child molesting even though alcohol was involved in the instant offense). Cf. Vasquez v. State, 762 N.E.2d 92, 97 (Ind. 2001) (affirming enhanced sentence for murder where criminal history reflected an escalation of violence).

The record also reflects that Brown has been using alcohol and marijuana since the age of ten, and he admitted to daily marijuana use. App. at 66.5. In one sense such abuse may be interpreted as evidence of Brown's bad character. Indeed, longstanding drug or alcohol abuse without improvement despite opportunities for rehabilitation may support such a conclusion. See Mefford v. State, 983 N.E.2d 232, 237-38 (Ind. Ct. App. 2013), trans. denied (finding forty-one-year-old defendant's "extensive and prolonged history of alcohol and drug use despite prior treatment does not reflect positively on his character"). On the other hand where children and adolescents are the victims of addiction, this fact does not necessarily indicate bad character. As Chief Justice Roberts has observed, a juvenile offender's difficult upbringing, which can include early drug and alcohol use, can serve to diminish the juvenile's culpability and weigh in favor of a lesser sentence. See Graham, 560 U.S. at 92 (Roberts, C.J., concurring in the judgment) (considering a sixteen-year-old defendant's difficult upbringing which included use of alcohol since age nine and marijuana since age thirteen in finding defendant's LWOP sentence for armed

_____

response giving voice to a community's outrage, based on the facts and circumstances of the crime" (quoting Escobedo v. State, 987 N.E.2d 103, 120 (Ind. Ct. App. 2013), vacated).

burglary to be disproportionate) (citing <u>Graham</u>, 560 U.S. at 53). In this case, we view Brown's drug use from childhood as reducing his culpability for the life path that led him to this crime.

Further supportive of Brown's character is that upon his arrest Brown gave police a detailed account of the crime. Both Brown and his mother waived Brown's <u>Miranda</u> rights and voluntarily spoke to police before consulting counsel. In fact, Brown's uncounseled statement to police provided the only non-circumstantial evidence produced at trial. And although Brown later recanted his statement, as the trial court observed at sentencing: "The Defendant's own statement was some of the most damning evidence against him in this case." Tr. at 411-12.

Finally—and most significantly—Brown was only sixteen years old at the time of the crime. We take this opportunity to reiterate what the United States Supreme Court has expressed: Sentencing considerations for youthful offenders—particularly for juveniles—are not coextensive with those for adults. <u>See</u> <u>Miller v. Alabama</u>, 132 S. Ct. 2455, 2469 (2012) (requiring the sentencing judge to "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison" (footnote omitted)). Thus, both at initial sentencing and on appellate review it is necessary to consider an offender's youth and its attendant characteristics.

In holding death sentences and mandatory life without parole sentences for those under the age of eighteen to be unconstitutional, the United States Supreme Court has underpinned its reasoning with a general recognition that juveniles are less culpable than adults and therefore are less deserving of the most severe punishments. <u>See</u> <u>Graham</u>, 560 U.S. at 68. This presumption that juveniles are generally less culpable than adults is based on previous and ongoing "'developments in psychology and brain science'" which "'continue to show fundamental differences between juvenile and adult minds'" in, for instance, "'parts of the brain involved in behavior control.'" <u>Miller</u>, 132 S. Ct. at 2464 (quoting <u>Graham</u>, 560 U.S. at 68). The Supreme Court has discerned "three significant gaps between juveniles and adults." <u>Id.</u> First, "[a]s compared to adults, juveniles have a 'lack of maturity and an underdeveloped sense of responsibility.'" <u>Graham</u>, 560 U.S. at 68 (quoting <u>Roper v. Simmons</u>, 543 U.S. 551, 569 (2005) (quotation omitted)). Second, "they 'are more vulnerable or susceptible to negative influences

8

and outside pressures, including peer pressure,'" id. (quoting Roper, 543 U.S. at 569), and "they have limited 'contro[l] over their own environment' and lack the ability to extricate themselves from horrific, crime-producing settings." Miller, 132 S. Ct. at 2464 (alteration in original) (quoting Roper, 543 U.S. at 569). Finally, "a child's character is not as 'well formed' as an adult's . . . and his actions [are] less likely to be 'evidence of irretrievabl[e] deprav[ity].'" Id. (alteration in original) (quoting Roper, 543 U.S. at 570). "These salient characteristics mean that '[i]t is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.'" Graham, 560 U.S. at 68 (alteration in original) (quoting Roper, 543 U.S. at 573). Even justices not finding categorical Constitutional violations in these juvenile cases agree with this precept. See Graham, 560 U.S. at 90 (Roberts, C.J., concurring in the judgment) ("Roper's conclusion that juveniles are typically less culpable than adults has pertinence beyond capital cases."); Roper, 543 U.S. at 599 (O'Connor, J., dissenting) ("It is beyond cavil that juveniles as a class are generally less mature, less responsible, and less fully formed than adults, and that these differences bear on juveniles' comparative moral culpability.").

Consistent with the Supreme Court's reasoning this Court has not been hesitant to reduce maximum sentences for juveniles convicted of murder. In Carter v. State, we reduced to fifty years a fourteen-year-old's maximum sixty-year sentence for the brutal murder of a seven-year-old girl, recognizing among other things his young age. 711 N.E.2d 835, 836-37 (Ind. 1999). In the case of a sixteen-year-old who brutally beat his adoptive parents to death while they slept, we reduced a maximum 120-year sentence to eighty years. Walton v. State, 650 N.E.2d 1134, 1135, 1137 (Ind. 1995). And in Widener v. State, 659 N.E.2d 529, 530 (Ind. 1995), the seventeen-year-old defendant and his two eighteen-year-old cohorts planned to rob a woman as she made a night deposit after work. In executing the crime, the defendant fired multiple shots at the victim, killing her. In the days after the robbery the perpetrators spent the proceeds of their crime at the mall, going to the movies and out to eat. Finding additional mitigating circumstances not recognized by the trial court, we concluded the defendant's seventy-year sentence was manifestly unreasonable and reduced it to an aggregate term of fifty years. Id. at 530-31, 534.

Similar to a life without parole sentence, Brown's 150 year sentence "'forswears altogether the rehabilitative ideal.'" Miller, 132 S. Ct. at 2465 (quoting Graham, 560 U.S. at 74)). Indeed, Brown's sentence essentially "'means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of the [juvenile] convict, he will remain in prison for the rest of his days.'" Graham, 560 U.S. at 70 (quoting Naovarath v. State, 779 P.2d 944, 944 (Nev. 1989)).

As noted earlier the trial court acted well within its broad discretion in imposing Brown's sentence. However in the exercise of our constitutional authority to review and revise sentences, we have attempted to explain why we are of the view that the 150 year sentence here is inappropriate. But what is an appropriate sentence in this case? As we have acknowledged before, there is "no right answer . . . in any given case." Cardwell v. State, 895 N.E.2d 1219, 1224 (Ind. 2008). Instead appellate review and revision ultimately boils down to the appellate court's "collective sense of what is appropriate, not a product of a deductive reasoning process." Id. at 1225. Enforcing this collective sense we "focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id. Applying these considerations to the case before us, we conclude that Brown should receive an enhanced sentence of sixty years for each count of murder to be served concurrently and an enhanced sentence of twenty years for robbery to be served consecutively, for a total aggregate sentence of eighty years imprisonment.

**Conclusion**

We affirm Brown's convictions and remand this cause to the trial court with instructions to issue an amended sentencing order consistent with this opinion.

Dickson, C.J., and David, Massa and Rush, JJ., concur.