**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**THOMAS W. VANES**
Office of the Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LYUBOV GORE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROLANDO L. DIAZ, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A05-1403-CR-122 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Salvador Vasquez, Judge
Cause No. 45G01-1110-FA-49

**October 24, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

After using marijuana, cocaine, and drinking continuously for fourteen hours, Rolando Luis Diaz shot into a crowd of rival gang members as the result of an argument. Diaz shot one man in the head and another four times in his body. Pursuant to a plea agreement Diaz pled guilty to two counts of Class B felony aggravated battery. The plea agreement stipulated that Diaz was to serve twenty years for each count, but it did not specify whether the sentences would be served concurrently or consecutively. The trial court ordered the sentences to be served consecutively, for an aggregate term of forty years in the Indiana Department of Correction. Diaz now appeals, arguing that his consecutive sentences are inappropriate in light of the nature of the offenses and his character. We find that the nature of the offenses and Diaz's character support his forty-year sentence. We therefore affirm the trial court.

**Facts and Procedural History**

October 8, 2011, was the ten-year anniversary of Diaz's brother's shooting death as a result of gang violence. Appellant's App. p. 170 (Pre-Sentence Investigation Report); Tr. p. 34. Twenty-nine-year-old Diaz was at a bar in Hammond, Indiana. Appellant's App. p. 57 (Stipulated Factual Basis). He had been drinking for fourteen hours as well as using marijuana and cocaine. *Id.* at 170; Tr. p. 34. At some point, Diaz "heard a conflict ar[ise] outside, so [he] went outside to see what was going on." Tr. p. 34, Appellant's App. p. 57, 170. An argument between Diaz and members of a rival gang ensued, and Diaz pulled out a gun and shot into the group of rival gang members multiple times. Appellant's App. p. 57; Tr. p. 34. According to Diaz, he saw "one [rival gang member] reach for his waistline

2

and [he] acted without thinking it through." Tr. p. 34-35. Diaz shot David Picazzo in the head and Edwardo Alfaro twice in the right-side armpit area, once in his right shoulder, and once on the right side of his chest. Appellant's App. p. 57; State's Ex. 2. Two Chicago Police Department officers witnessed the shootings and immediately approached Diaz; he fled from the officers and was found hiding under a boat near the bar. Appellant's App. p. 24, 57.[1] Diaz was then taken into custody by Hammond police officers. *Id*. at 24.

The State charged Diaz with Count I: Class A felony attempted murder (Picazzo); Count II: Class A felony attempted murder (Alfaro); and Count III: Class A misdemeanor resisting law enforcement. *Id*. at 22-23. In May 2013—pursuant to a plea agreement—the State agreed to file an amended information that added Count IV: Class B felony aggravated battery (Picazzo) and Count V: Class B felony aggravated battery (Alfaro); the State agreed to dismiss Counts I, II, and III. *Id*. at 54-56. Diaz then pled guilty to Counts IV and V. The plea agreement stipulated that Diaz would be sentenced to twenty years in the DOC for each count, but it did not specify whether the sentences were to run concurrently or consecutively. *Id.*

At the sentencing hearing, the trial court found Diaz's guilty plea and admission of responsibility as the sole mitigator. *Id*. at 13-14. In aggravation, the court considered Diaz's extensive criminal history, specifically his adult 2001 felony convictions for delivery of cocaine and use of a weapon in Cook County, Illinois, where he served an aggregate sentence of seven years in the Illinois Department of Correction. The court also found Diaz's 2004 felony conviction for possession of cocaine significant. *Id*. Diaz did

---

[1] We generally do not cite to a probable-cause affidavit for the facts; however, because both parties cite to the probable-cause affidavit as a source of some of the facts, we do too.

not receive his four-year sentence in the DOC for the 2004 conviction until 2007, however the court also considered his parole violation for the 2004 felony conviction. *Id.* Last, the court considered that prior leniency by criminal courts had no deterrent effect on Diaz's criminal history and that Diaz had committed multiple offenses involving separate and distinct victims. *Id.* Before sentencing Diaz the trial court explained its reasoning:

> [T]here's no doubt in my mind that you had the full love and support of your family growing up; but, of course, you chose the wrong path. But the problem is . . . that we fail to learn from our mistakes. [W]e have to learn life's lessons. And the problem with you, Mr. Diaz, is that you just never learned. You get to a point where now someone is significantly hurt. One guy was shot, what, four or five times . . . . And the other guy was shot in the head. [] You should have learned from your prior mistakes. Two victims, two sentences. . . . I see no other option, Mr. Diaz, based on your actions.

Tr. p. 44-50. Finding that the aggravator substantially outweighed the sole mitigator of Diaz's guilty plea, the trial court ordered the sentences to be served concurrently, for an aggregate term of forty years in the DOC.

Diaz now appeals.

**Discussion and Decision**

Diaz contends that "consecutive sentences for these crimes—crimes spontaneously committed seconds apart and while fueled by drinking[,] drugs[,] and grief—are inappropriate." Appellant's Br. p. 6. Diaz specifically argues that his sentence is inappropriate because, "despite the presence of multiple victims . . . (a) the nature of the offenses was not aggravated due to the context in which the shooting occurred, and (b) [Diaz's] criminal history, while lengthy, was the product of the gang culture in which he

4

had long been immersed but from which he had begun to distance himself."[2]  *Id*. at 3.  We disagree.

"[T]he Indiana Constitution authorizes independent appellate review and revision of a trial court's sentencing decisions."  *Brown v. State*, 10 N.E.3d 1, 4 (Ind. 2014).  "We implement this authority through Indiana Appellate Rule 7(B), which provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision we find the sentence is inappropriate in light of the nature of the offense and the character of the offender."  *Id*. (quotations omitted).  "We have long said that sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference."  *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008) (citing *Morgan v. State*, 675 N.E.2d 1067, 1072 (Ind. 1996)).  In determining whether a sentence is appropriate the court looks at the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case.  *Id.* at 1224.  Diaz bears the burden on appeal of persuading us that his sentence is inappropriate.  *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

Concerning the nature of the offenses, there is no question that as a result of an argument, Diaz pulled out his gun and shot into a group of rival gang members, causing serious bodily injury to two victims.  Picazzo was shot in the head, and Alfaro was shot four times in his body.  At sentencing, the trial court commented:

> You shot him up is what you did.  And the other guy was shot in the head.
> Who knows why this guy didn't die.  As I'm looking at . . . the bullet hole,

---

[2] Diaz acknowledges that because he committed the same offense against two victims, consecutive sentences are warranted and therefore only argues inappropriate sentence on appeal.  *See* Appellant's Br. p. 5 ("Diaz recognizes [the] . . . general rule, [that] where a defendant commits the same offense against two victims, enhanced and consecutive sentences are justified.").

[its] right smack in [Picazzo's] forehead and it came out through the back of his neck. That's the report I have here. That's a death wound. That's you.

Tr. p. 44. The nature of Diaz's offenses fully supports his forty-year sentence.

In evaluating Diaz's character, this Court has stated that "[t]he significance of a criminal history in assessing a defendant's character is based on the gravity, nature, and number of prior offenses in relation to the current offense." *Boling v. State*, 982 N.E.2d 1055, 1060 (Ind. Ct. App. 2013) (citing *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007)). Even a minor criminal history is a poor reflection on a defendant's character. *Id.* Diaz, however, does not have a minor criminal history. In 2001 Diaz received two felony convictions for manufacture and delivery of cocaine and use of a weapon in Cook County, Illinois, where he served an aggregate sentence of seven years in the Illinois DOC. Appellant's App. p. 166 (PSI). In 2004 Diaz was convicted of Class C felony possession of cocaine, Class D felony possession of a controlled substance, Class D felony possession of marijuana, Class D felony maintaining a common nuisance, and Class A misdemeanor possession of paraphernalia. *Id.* at 167. Diaz then spent about a year and a half on the run, but he was eventually apprehended in Hammond, Indiana. *Id.* at 170; Tr. p. 48. In 2007 he was sentenced to an aggregate term of four years in the DOC and was discharged to parole in 2010. Appellant's App. p. 68. However, "[s]ubmission of dirty drops while on parole resulted in his parole violation and return to the [DOC]." *Id.* at 170. Diaz was discharged from parole in October 2011 and just two months later committed the instant offenses. *Id.* at 168. In total, Diaz has one misdemeanor conviction and six felony convictions, and he was categorized as a high risk to reoffend. *Id.* at 172. Diaz's extensive criminal history reflects very poorly on his character.

6

Last, Diaz benefited greatly from his plea agreement. As the trial court pointed out at sentencing:

> [I]t certainly seems to me that based on the wounds themselves, that this is probably an attempted murder case. But through negotiations your attorney managed to bring that down to an agreed 20-year term for each one of them—of your victims—which is the maximum sentence for a Class B felony. Attempted murder has the minimum sentence of 20 years, maximum of 50. You lose at trial, there's no question you're going away for about 70 years with your kind of history on an attempted murder twice over. No question. So instead of looking at a maximum of 40, you're at about the 70 year mark.

Tr. p. 45.

Given the violent nature of the offenses, the two victims, and his extensive criminal history, Diaz has failed to persuade us that his aggregate forty-year sentence is inappropriate in light of the nature of the offenses and his character. We therefore affirm the trial court.

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.