


FILED

Sep 30 2025, 9:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Kriston Lamar Barbee Jr.,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

September 30, 2025

Court of Appeals Case No.
24A-CR-2317

Appeal from the Lake Superior Court

The Honorable Samuel L. Cappas, Judge

Trial Court Cause No.
45G04-2308-MR-38

**Opinion by Judge Weissmann**
Judge Scheele concurs.
Judge May concurs in part and dissents in part with a separate opinion.

**Weissmann, Judge.**

[1] Seventeen-year-old Kriston Barbee Jr. gunned down a 13-year-old boy for disrespecting Barbee's gang. A jury convicted Barbee of murder and found that a gang enhancement applied to his sentence. The trial court then sentenced Barbee to 62½ years for murder, plus 62½ years for the gang enhancement, for a total sentence of 125 years. Barbee appeals his conviction, challenging the trial court's admission of certain evidence at trial. Given the overwhelming evidence of Barbee's guilt, we find that admitting the challenged evidence was, at most, harmless error.

[2] Barbee also appeals his 125-year sentence, claiming it is inappropriate under Indiana Appellate Rule 7(B). Considering Barbee's youth and our Supreme Court's inclination to reduce lengthy term-of-years sentences for juveniles convicted of murder, we conclude a downward adjustment to Barbee's sentence is appropriate. We ultimately affirm in part, reverse in part, and remand for entry of a 110-year total sentence.

## Facts

[3] Barbee is a member of "Chop Gang," a "younger subset" of the "49th Avenue" gang that operates on the east side of Gary, Indiana. Tr. Vol. V, pp. 217-18. Chop Gang is named after Julius "Chop" James, a revered member of the 49th Avenue gang who was killed in 2019. Barbee's friends Dahvee Brunson, Elijah Porter, and Ladaisha Baker are also members of Chop Gang. Thirteen-year-old Orie Dodson was not.

[4] At noon on February 15, 2023, Dodson was shot and killed on the grounds of Gary Power and Light Church. An autopsy later revealed he was struck by three bullets: one in his left knee, one in his left thigh, and one in his right torso. The bullet to Dodson's torso proved fatal, as it perforated his heart and lungs and caused "rapid massive bleeding." Tr. Vol. IV, 43. All three bullets entered the back of Dodson's body and exited the front, indicating he was facing away from the gunfire. His wounds also showed no signs of close-range firing.

[5] Gary Power and Light Church is generally located on West 15th Avenue, between Lincoln Street and Buchanan Street. As indicated on the diagram below, Dodson's body was found on the south side of a church building, along West 15th Avenue. Roughly 50 yards to the east, in the roadway of Buchanan Street, police recovered 38 spent shell casings. Forensic analysis of these casings revealed that they were fired from three different firearms, including two with "Glock-type" firing pins. *Id.* at 172-73.



Exhs. Vol. II, p. 14.

[6] Police recovered video footage from two of Gary Power and Light Church's outdoor security cameras, identified on the diagram above as "Camera 3" and "Camera 4." These cameras did not capture the shooting, but they recorded a silver GMC Acadia driving past the Church at the time the shooting occurred.

[7] Specifically, Camera 4 captured the Acadia at 11:59:19 a.m., traveling east on West 15th Avenue as it crossed Lincoln Street. Three seconds later, at 11:59:22 a.m., Camera 3 caught a glimpse of the Acadia as it approached Buchanan Street and went out of view on the south side of the church building where Dodson's body was later found. Fifty-two seconds after that, at 12:00:14 p.m., Camera 3 recorded the Acadia come back into view on the east side of the church building, driving north on Buchanan Street after making a left turn.

[8] According to police, it should have taken only a "[m]atter of seconds" for the silver GMC Acadia to turn left onto Buchanan Street and come back into Camera 3's view. Tr. Vol. V, p. 213. Police therefore theorized that, for most of the near-minute the Acadia was out of view, it was stopped where the 38 spent shell casings were later found and that its occupants were conducting a drive-by shooting of Dodson.

[9] Early in the investigation into Dodson's death, someone anonymously directed the Gary Police Department (GPD) to the "Gary Crimes" Facebook page. Tr. Vol. IV, p. 52. Posted on this page were three video recordings that captured

portions of an "Instagram Live"[1] broadcast that occurred a few days before Dodson was killed. *Id.* at 58. Dodson and four Chop Gang members—Barbee, Brunson, Porter, and Baker—all appeared at various times on the recordings, each having joined the broadcast from their individual Instagram accounts.

[10] The Instagram Live broadcast featured a "pinned"[2] comment in which Baker stated: "Long Live Chop" and "F**k da opps." Tr. Vol. IV, p. 6; Exhs. 323, 326, 328. The word "opps" is slang for "opposition" and is often used to refer to "rival" gangs and their members. Tr. Vol. V, p. 218. According to one GPD detective, Barbee, Brunson, Porter, and Baker commonly referred to Dodson as an "opp," which was "[a]bsolutely not" a good thing. Tr. Vol. IV, p. 65.

[11] The broadcast interactions between Dodson and the four gang members were mutually antagonistic. On one of the three recordings, Dodson loudly rapped along to "opp" songs while Barbee, Brunson, and Porter heckled him in return. Exh. 326 at 2:03; *accord* Exh. 323. Dodson also disrespected Chop Gang by "dropping"[3] an "east side" gang sign with his fingers. Tr. Vol. V, p. 216. In

---

[1] Instagram Live is a social media feature that allows a user to broadcast a live video of themselves to their Instagram account, which can be viewed by other Instagram users in real time. With the host's approval, up to three users may join the broadcast as guests and simultaneously appear and interact on the live video in split screen.

[2] During an Instagram Live broadcast, viewers can post written comments that temporarily appear on the video feed. These comments typically scroll from the bottom of the feed to the top before disappearing. But a "pinned" comment is one the host has selected to appear at the bottom of the feed until either the comment is unpinned or the broadcast ends.

[3] "Dropping" a gang sign occurs when a person makes a rival gang's symbol with their fingers but "point[s] it to the ground," displaying the symbol upside down. Tr. Vol. V, p. 216.

response, Brunson stated: "[K]eep dropping that s**t, so I can come shoot your momma's house up." Exh. 323 at 1:15-22.

[12] On another recording from the Instagram Live broadcast, the following exchange occurred between Brunson, Baker, and Dodson:

> [Baker]: How you know Chop? How you know JJ? You don't, b***h!
>
> [Dodson]: Them the guys! Them the guys, bro! Them the guys!
>
> [Baker]: You don't know Chop. I promise you, you'll get seen about.
>
> [Dodson]: Them the guys, s**t. Y'all should have been seeing me then, if that was the case. I already should have been seen.
>
> [Baker]: Bro, you're like 13, who the f**k [is going] to really think about you, bro?
>
>         ***
>
> [Brunson]: You just want to say f**k everybody's gang. . . . You just want to die. . . . That's the only explanation for you doing the s**t you doing.
>
>         ***
>
> [Baker]: Chop my blood brother. . . . You gone get your ass smoked b***h! Stop playing.
>
>         ***
>
> [Dodson]: F**k Chop.

Exh. 328 at 0:22-1:25.

[13] GPD detectives were familiar with Chop Gang and immediately considered that Dodson's actions on the Instagram Live broadcast—especially him saying "F**k Chop"—may have motivated his drive-by shooting a few days later. Further investigation led detectives to search Barbee's cell phone, and the evidence implicated Barbee as one of the shooters. Because Barbee was 17 at the time of the shooting, the State charged him as an adult with Dodson's murder. The State also sought an enhanced sentence under Indiana Code § 35-50-2-15, alleging Barbee committed the offense in affiliation with a criminal gang.

[14] At Barbee's jury trial, the State argued that Barbee—along with Brunson and Porter—killed Dodson for disrespecting Chop Gang during the Instagram Live broadcast a few days earlier. Among other things, the State presented evidence that Barbee possessed a silver GMC Acadia on the day of Dodson's shooting and was near Gary Power and Light Church at the time Dodson was killed. The State also presented evidence of incriminating statements Barbee made in the days following Dodson's death.

[15] The jury found Barbee guilty as charged and that the gang enhancement applied to his sentence. The trial court then sentenced Barbee to 62½ years for murder, plus 62½ years for the gang enhancement, for a total sentence of 125 years imprisonment. In sentencing Barbee above the 55-year advisory sentence for murder, the court emphasized Barbee's juvenile history and the fact that he was "engulfed in a gang lifestyle," among other aggravating circumstances. Tr. Vol. VII, p. 89. The court also stated, "[I]t is not the Court's job to rehabilitate the

defendant." App Vol. III, p. 96. But according to the court, "Barbee is incorrigible and can't be rehabilitated." Tr. Vol. VII, p. 88.

## Discussion and Decision

[16] Barbee appeals both his murder conviction and his 125-year total sentence on various grounds. We affirm his conviction but find his sentence inappropriate under Indiana Appellate Rule 7(B). Accordingly, we reverse Barbee's sentence and remand for him to be sentenced to 55 years for murder, plus 55 years for the criminal gang enhancement, for a total sentence of 110 years imprisonment.

## I.    Murder Conviction

[17] In appealing his murder conviction, Barbee argues that the trial court erred by admitting the following evidence at trial:

1. A screenshot of the Gary Crimes Facebook page, depicting one of the three Instagram Live recordings as it was posted thereon;

2. Several electronic license plate reader reports, which contained photographs of a silver GMC Acadia as it travelled around Gary on February 14 and 15, 2023; and

3. A GPD detective's testimony that it "appear[ed] as though "[Dodson] was ambushed by more than one person" and "probably was running away from the scene." Tr. Vol. V, p. 212.

[18] We typically review a trial court's evidentiary rulings for abuse of discretion, which occurs when a ruling is "clearly against the logic and effect of the facts and circumstances" before the court. *McCoy v. State*, 193 N.E.3d 387, 390 (Ind. 2022). However, we generally disregard errors in the admission of evidence

unless they affected a party's "substantial rights." *Hoglund v. State*, 962 N.E.2d 1230, 1238 (Ind. 2012). Here, the trial court's admission of the challenged evidence did not affect Barbee's substantial rights; thus, we need not consider whether the court abused its discretion as alleged.

[19] "In viewing the effect of the evidentiary ruling on a defendant's substantial rights, we look to the probable impact on the fact finder." *Id.* "The improper admission [of evidence] is harmless error if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court there is no substantial likelihood the challenged evidence contributed to the conviction." *Id.* We find it substantially unlikely that the challenged evidence contributed to Barbee's murder conviction because the State presented other overwhelming evidence of his guilt.

[20] The unchallenged evidence presented at Barbee's trial established that, at noon on February 15, 2023, the occupants of a silver GMC Acadia killed Dodson in a drive-by shooting on the grounds of Gary Power and Light Church. The following unchallenged evidence further proved beyond a reasonable doubt that Barbee was an occupant of the Acadia and a participant in the shooting:

- The testimony of Delaney Worthy, an acquaintance of Barbee's. Worthy testified that he loaned Barbee his silver 2010 GMC Acadia on February 14, 2023—the day before Dodson was killed—purportedly so Barbee could take his girlfriend out for a Valentine's Day dinner.

- A cell phone video recorded around 9:45 p.m. on February 14, 2023. In this video, Barbee and Brunson are standing next to a silver GMC Acadia, and each displays a Glock handgun outfitted with an extended

magazine and a "switch." A "switch" is an accessory that transforms a Glock into a fully automatic firearm. Tr. Vol. VI, p. 66.

- A text exchange that occurred between Barbee and an unidentified individual at 11:37 p.m. on February 14, 2023—a little more than 12 hours before Dodson was killed. During this exchange, Barbee indicated that he had plans to "slide." Exhs. Vol. III, p. 171. "Sliding" is slang for doing a "drive-by shooting." Tr. Vol. III, p. 193.

- Location data from Barbee's cellphone showing that the phone was uncharacteristically near Gary Power and Light Church at 12:01 p.m. on February 15, 2023—just a minute after Dodson was killed.

- Unanswered text messages that Worthy sent to Barbee on the night of February 15, 2023—hours after Dodson was killed—inquiring as to the whereabouts of Worthy's silver GMC Acadia.

- A text exchange that occurred between Barbee and his girlfriend, Kamryn Aaron, on February 16, 2023—the day after Dodson was killed. During this exchange, Aaron sent Barbee a news article about Dodson's shooting followed by the messages: "13 years old was age" and "lil boy" Exhs. Vol. III, p. 153. Barbee responded with the message: "Playing GROWN MAN GAMES BABY." *Id.* He then followed up with the message: "Delete that." *Id.*

- A text exchange that occurred between Barbee and Aaron on February 17, 2023—two days after Dodson was killed. During this exchange, Aaron advised Barbee about a rumor that someone "dropped [their] clip at [the] scene." Exhs. Vol. III, p. 162. Barbee replied, "Not me." *Id.* And when Aaron asked who had dropped their clip, Barbee stated, "dahvee . . . or ej," presumably referring to Brunson and Porter. *Id.* at 164-65.

[21]  Given this overwhelming, independent evidence of Barbee's guilt, we find that the trial court could have committed only harmless error by admitting the evidence Barbee challenges on appeal. We therefore affirm Barbee's murder conviction.

## II.  Enhanced Sentence

[22]  Barbee appeals his 125-year sentence on two grounds. First, he claims the trial court erred by considering the gang-related nature of his offense and his history of contacts with the juvenile justice system as reasons for enhancing his individual murder sentence. Second, he claims his total sentence was inappropriate under Indiana Appellate Rule 7(B).

## A.  Sentencing Rationale

[23]  When imposing a sentence for a felony offense, a trial court is required to enter a sentencing statement explaining the reasons it imposed a particular sentence. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. We review challenges to these reasons for abuse of discretion. *Id.* A trial court may abuse its discretion by failing to enter the required sentencing statement, by failing to consider reasons that were advanced for consideration and clearly supported by the record, or by considering reasons that are not supported by the record or are improper as a matter of law. *Id.* at 490-91.

[24]  In its written sentencing statement, the trial court included the following as reasons for sentencing Barbee to 62½ years for murder:

> 1.  The Court finds that the defendant has had eleven (11) contacts with the juvenile justice system resulting in eight (8) juvenile adjudications, five (5) of which were misdemeanors and three (3) of which were felonies; culminating in this murder;
>
> 2.  The Court finds that the nature and circumstances of the crime are such that the defendant lived a lifestyle which

was engulfed in gang activity evidenced through his social media;

3.  The Court further finds that because the defendant has had eleven (11) contacts with the juvenile justice system, the defendant led a lifestyle of crime and there was no indication of him ever ceasing or relenting in his criminal activity. The Court finds that this reflects adversely on the defendant's character and is unsure if the defendant can be rehabilitated[;]

***

6.  The Court finds that the killing was gang related or motivated.

App. Vol. III, p. 96.

[25] Barbee argues that the trial court improperly considered the gang-related nature of his offense as a reason for enhancing his individual murder sentence because he received a separate criminal gang enhancement. We agree. Though "[a] crime's gang connection justifies an enhanced sentence," our Supreme Court has stated that the criminal gang enhancement required by Indiana Code § 35-50-2-15(d) "more than captures this point." *Wilson v. State*, 157 N.E.3d 1163, 1182 (Ind. 2020). We therefore find the trial court abused its discretion by considering the gang-related nature of Barbee's offense when fashioning his murder sentence.

[26] Barbee also argues the trial court improperly considered his history of contacts with the juvenile justice system at sentencing. We agree as to Barbee's three unadjudicated contacts but not as to his eight delinquency adjudications.

Indiana Code § 35-38-1-7.1(a)(2) expressly permits a court to consider a defendant's "history of criminal or delinquent behavior" in determining whether an enhanced sentence is appropriate. But a court may not consider a "[defendant's] juvenile contacts with the justice system not reduced to an adjudication as part of the criminal history aggravator of his sentence." *Morrell v. State*, 121 N.E.3d 577, 579 (Ind. Ct. App. 2019). "When a juvenile proceeding ends without a disposition, the mere fact that a petition was filed alleging delinquency does not suffice as proof of a criminal history." *Day v. State*, 560 N.E.2d 641, 643 (Ind. 1990).

[27] Accordingly, we also find the trial court abused its discretion by considering Barbee's three unadjudicated contacts with the juvenile justice system when fashioning his murder sentence. But when a trial court has erred in the process it used to sentence a defendant, "the error is harmless if the sentence imposed was not inappropriate." *Mendoza v. State*, 869 N.E.2d 546, 556 (Ind. Ct. App. 2007) (citing *Windhorst v. State*, 868 N.E.2d 504, 507 (Ind. 2007)). We therefore turn to Barbee's claim under Indiana Appellate Rule 7(B).

## B. Appropriateness of Sentence

[28] Indiana Appellate Rule 7(B) permits an appellate court to revise a sentence if, "after due consideration of the trial court's decision, the sentence is found to be inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "Our principal role in reviewing a sentence is to 'leaven the outliers.'" *Kelly v. State*, 257 N.E.3d 782, 805 (Ind. 2025)

(quoting *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008)). "Put another way, Rule 7(B) review allows us to 'work toward a goal of similar sentences for perpetrators committing the same acts who have the same backgrounds.'" *Id.* (quoting *Lane v. State*, 232 N.E.3d 119, 123 (Ind. 2024)).

[29]     Our Supreme Court has not been hesitant to reduce the enhanced murder sentences of juvenile offenders under Appellate Rule 7(B). *See State v. Stidham*, 157 N.E.3d 1185, 1198 (Ind. 2020) (reducing 17 year old's total sentence for murder, robbery, criminal confinement, and battery from 138 years to 88 years); *Taylor v. State*, 86 N.E.3d 157, 167 (Ind. 2017) (reducing 17 year old's total sentence for murder and conspiracy to commit murder from life without parole to 80 years); *Brown v. State*, 10 N.E.3d 1, 8 (Ind. 2014) (reducing 16 year old's 150-year total sentence for two murders from 150 years to 80 years); *Fuller v. State*, 9 N.E.3d 653, 659 (Ind. 2014) (reducing 15 year old's total sentence for two murders and a robbery from 150 years to 85 years); *cf. Kelly v. State*, 257 N.E.3d 782, 805 (Ind. 2025) (declining to reduce 16 year old's 110-year total sentence for three brutal murders), *reh'g denied*.

[30]     But Barbee's sentence is somewhat unique in that it includes a criminal gang enhancement. When a defendant is found to have committed a felony offense in affiliation with a criminal gang, Indiana's criminal gang enhancement statute requires the trial court to:

> (1) sentence the person to an additional fixed term of imprisonment equal to the sentence imposed for the underlying felony, if the person is sentenced for only one (1) felony; or

> (2) sentence the person to an additional fixed term of imprisonment equal to the longest sentence imposed for the underlying felonies, if the person is being sentenced for more than one (1) felony.

Ind. Code § 35-50-2-15(d). The statute further provides that the additional sentence "shall run consecutively to the underlying sentence" and "may not be suspended." Ind. Code § 35-50-2-15(e)-(f).

[31] Here, the trial court sentenced Barbee to 62½ years for murder, which is 7½ years above the 55-year advisory sentence and only 2½ years short of the 65-year maximum. Ind. Code § 35-50-2-3(a). But Barbee's sentence automatically doubled to 125 years by virtue of the criminal gang enhancement. Our research revealed only one case—*Wilson v. State*, 157 N.E.3d 1163 (Ind. 2020)—in which our Supreme Court has reviewed a juvenile's gang-enhanced murder sentence under Appellate Rule 7(B).[4]

[32] In *Wilson*, 16-year-old Donnell Wilson and his friend Jonte Crawford were walking home from playing basketball when they "happened upon" two rival gang members, Shaqwon Ham and Charles Wood. *Id.* at 1167. Ham and Wood had previously made online threats to fight Wilson, and the four individuals

---

[4] Our research revealed no cases in which the Court of Appeals has reviewed a juvenile's gang-enhanced murder sentence under Appellate Rule 7(B). But in *Banks v. State*, 228 N.E.3d 528 (Ind. Ct. App. 2024), a split panel of this Court relied, in part, on *Wilson* in reducing a 16 year old's total sentence for quadruple murder and robbery from 220 years to 135 years.

began arguing almost immediately. Seconds later, Wilson shot Wood in the head, killing him. Crawford then shot and killed Ham as he tried to run away.

[33] A jury found Wilson guilty of two counts of murder (one as an accomplice) and that a criminal gang enhancement applied to his sentence. The jury also found Wilson guilty of armed robbery, which he and Crawford had committed against another individual shortly before the murders. The trial court sentenced Wilson to consecutive terms of 60 years for murder, plus 60 years for the criminal gang enhancement; 55 years for murder as an accomplice; and 6 years for armed robbery—a total sentence of 181 years.

[34] Our Supreme Court later found Wilson's sentence inappropriate under Indiana Appellate Rule 7(B). As to the nature of his offenses, the Court described the murders as "senseless and reprehensible" but noted there was "no evidence that the victims were tortured, beaten, or lingered in pain." *Id.* at 1181-82. The Court further observed:

> Wilson fired a single gunshot at Wood, instantly killing him, and was an accomplice to Ham's death—who was shot almost simultaneously. Although shocking, these shootings do not rise to the same level of heinousness of recent murders by juveniles where we found an enhanced sentence appropriate. *See, e.g.*, *Conley*, 972 N.E.2d at 876 (finding the heinousness of the murder justified a life without parole sentence for a seventeen-year-old because—while babysitting his ten-year-old brother—he strangled the young child to death for over twenty minutes while the victim begged him to stop before slamming the victim's head on the concrete to ensure he was dead).

*Id.* at 1182.[5]

[35] As to Wilson's character, our Supreme Court observed that his actions while awaiting trial "evince[d] that he had learned little following his arrest." *Id.* Specifically, in a recorded jailhouse conversation, "Wilson stated a desire to 'smash' a member of a rival gang incarcerated in the same facility, bragged about the murders to a cellmate, and showed a desire to continue to participate in gang activity." *Id.* The Court also noted that Wilson had a prior juvenile adjudication for what would have been dangerous possession of a firearm if committed by an adult, a misdemeanor. *Id.* But the Court found these factors were "outweighed" by Wilson's youth. *Id.*

[36] In the end, our Supreme Court reduced Wilson's 181-year total sentence to 100 years—50 years for murder, plus 50 years for the criminal gang enhancement; a concurrent term of 50 years for murder as an accomplice; and a concurrent term of 6 years for armed robbery. In doing so, the Court acknowledged that it had reduced juvenile murder sentences even further in other cases with similar facts but without a criminal gang enhancement. The Court, however, explained: "[W]e must respect the legislature's determination that the corrosive nature of gang activity justifies a higher sentence." *Id.* at 1184.

---

[5] As previously mentioned, *supra* ¶ 25, the *Wilson* Court also recognized that the murders' gang connection warranted an enhanced sentence, but the Court concluded that factor was "accounted for in the mandatory criminal gang enhancement." 157 N.E.3d at 1182.

[37] Barbee claims the nature of his offense warrants a reduced sentence because, like the murders in *Wilson*, "there is no evidence that [Dodson] was tortured, mutilated, or lingered in pain." Appellant's Br., p. 27. Though true, we find Barbee's offense alarming in other ways. Barbee gunned down Dodson—a 13-year-old boy—for things he said on social media a few days earlier. And unlike the defendant in *Wilson*, who happened upon his victims, engaged them in argument, and ultimately fired a single gunshot at the person he killed, Barbee planned a drive-by shooting of Dodson at least a day in advance and, along with Brunson and Porter, fired 38 gunshots at Dodson from roughly 50 yards away, striking him three times in the back. The nature of Barbee's offense does not persuade us to revise his sentence.

[38] Barbee also claims his character warrants a reduced sentence, emphasizing that the trial court entirely discounted Barbee's age at the time of Dodson's murder. Though we conduct our Rule 7(B) analysis independent from the trial court's sentencing considerations, we agree with Barbee that the court missed the mark in considering Barbee's youth. Our Supreme Court has observed that "juveniles are less culpable than adults and therefore are less deserving of the most severe punishments." *Brown v. State*, 10 N.E.3d 1, 7 (Ind. 2014) (citing *Graham v. Florida*, 560 U.S. 48, 68 (2010)). Thus, "it is necessary to consider an offender's youth and its attendant characteristics" at sentencing. *Id.* at 6-7.

[39] In its written sentencing statement, trial court found that "taking [Barbee's]

youth into account would be inappropriate because taking a defendant's youth into account at sentencing . . . is due to the fact that teenagers are supposed to be innocent and naive." App. Vol. III, p. 95. In its oral sentencing statement, the court further explained that Barbee's juvenile history "is evidence of the fact that his innocence or naivety of a youth doesn't apply to him." Tr. Vol. VII, p. 88. The court went on to state:

> Mr. Barbee has had, from my perspective - - since he's been through the juvenile justice system with eight adjudications, he had eight times to be rehabilitated through the system. They all failed, which leads me to believe that Mr. Barbee is incorrigible and can't be rehabilitated. If he didn't take to it at a young age, I doubt that he's going to take to it any time soon.

*Id.*

[40]   Contrary to the trial court's characterization, "[the] presumption that juveniles are generally less culpable than adults is based on previous and ongoing developments in psychology and brain science which continue to show fundamental differences between juvenile and adult minds . . . ." *Brown*, 10 N.E.3d at 7 (internal quotation marks and citations omitted). "[A]s compared to adults, children lack maturity and have an underdeveloped sense of responsibility." *Taylor*, 86 N.E.3d at 166 (internal quotation marks and citations omitted). They are also "more vulnerable to negative influences and pressures—including peer pressure—and thus lack control over and the ability to escape

from crime-producing environments." *Id.* And "their character is less developed than that of adults, so their actions are less likely to show irretrievable depravity." *Id.*

[41] As Barbee was only one-year older than the defendant in *Wilson*, Barbee's youth should have been taken into account at sentencing. That being said, Barbee's juvenile history is more extensive than that of the defendant in *Wilson*. From ages 12 to 17, Barbee racked up eight delinquency adjudications for acts that, if committed by an adult, would have been: (1) Level 5 felony attempted robbery; (2) Level 6 felony auto theft; (3) Level 6 felony possession of cocaine; (4) Class A misdemeanor criminal trespass; (5) Class A misdemeanor theft; (6) Class A misdemeanor dangerous possession of a firearm; (7) Class B misdemeanor disorderly conduct; and (8) Class B misdemeanor criminal mischief.

[42] Still, we find Barbee's 125-year sentence inappropriate given his youth at the time of the offense. "[A]ppellate review and revision ultimately boils down to the appellate court's collective sense of what is appropriate." *Wilson*, 157 N.E.3d at 1181 (quoting *Brown*, 10 N.E.3d at 8). Taking our cue from the Supreme Court's recent analysis in this area, *see id.* and *supra* ¶ 29, we conclude that Barbee should receive an advisory sentence of 55 years for Dodson's murder, plus 55 years for the criminal gang enhancement, for a total sentence of 110 years imprisonment.

## Conclusion

[43] We affirm Barbee's murder conviction, reverse his 125-year total sentence, and remand for entry of a 110-year total sentence as specified above.

Scheele, J., concurs.
May, J., concurs in part and dissents in part with a separate opinion.

ATTORNEY FOR APPELLANT

R. Brian Woodward
Appellate Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Tyler Banks
Supervising Deputy Attorney General
Indianapolis, Indiana

**May, Judge, concurring in part and dissenting in part.**

[44] While I concur in my colleagues' decision to affirm Barbee's conviction of murder, I cannot concur with the reduction of Barbee's sentence. Barbee and his fellow gang members shot thirty-eight times at thirteen-year-old Dodson as he ran away from them, and they killed Dodson simply because he had spoken disrespectful words about their gang. Although Barbee was only seventeen-and-a-half years old when he committed this crime, he already had been adjudicated a delinquent eight times, he had received multiple opportunities to reform his behavior (including in the DOC), and he had instead entrenched himself in a gang lifestyle. I find nothing inappropriate about a 125-year sentence under these circumstances, even considering Barbee's age. When Barbee has served twenty years of his sentence, if he has availed himself of opportunities to reform his character and behavior, he may petition for reduction of his sentence under Indiana Code section 35-38-1-17(n). Until he makes such showings, I believe 125-years is not inappropriate, and I respectfully dissent in part.